KING IRON BRIDGE & MANUF'G CO. *v.* CITY OF ST. LOUIS.

*(Circuit Court, E. D. Missouri, E. D.* November 5, 1890.)

**1. CONTRACTS—TIME—WAIVER.**

Plaintiff contracted with defendant to build a bridge "on the present stone piers," and bound himself to complete the work within ten months and one week after receiving notice to begin. Defendant failed to prepare the piers to receive the bridge until eleven months after it had given plaintiff notice to begin. *Held,* that such failure released plaintiff from the obligation to complete the bridge within the specified time.

**2. SAME—ARBITRATION CLAUSE.**

A provision in a contract with a city that the street commissioner shall decide all questions that may arise relative to the execution of the contract, and that his decision shall be final, does not give him jurisdiction to determine the legal question whether the contractor has incurred a penalty provided for in the contract.

At Law.

In this case it appears from the record that on November 18, 1887, plaintiff contracted with the city of St. Louis "to furnish and erect the iron and steel work of the superstructure of the main spans of the Grand Avenue bridge, on the present stone piers, and to connect the same with the iron-work of the anchorage," in conformity with certain plans and specifications, and for the sum of $144,000. The contract contained a provision that the work embraced therein should be begun by the plaintiff "within one week after written notice so to do had been given to the plaintiff by the street commissioner," and that the work should be completed within ten months thereafter. It was also provided by the same clause of the contract that, if the plaintiff failed to complete the work within the time limited, the sum of $20 per day for the first 30 days' delay, and $30 per day for the succeeding 30 days' delay, and $40 per day for the residue of the time, until the work was completed, should be deducted from the contract price. Notice to begin the work was given by the street commissioner on December 12, 1887, but the stone piers on which the bridge superstructure was to be erected were not completed by the city, ready to receive said superstructure, until November 12, 1888,—more than one week and ten months after the notice to begin had been given. The work embraced by the contract was completed by the plaintiff on June 17, 1889, or, as admitted by the answer, on May 30, 1889. The contract also contained the following provision:

"(8) To prevent all disputes and litigation, it is further agreed by the parties hereto that the street commissioner shall in all cases determine the amount or quantity of the several kinds of work which are to be paid for un-

der this contract; and he shall decide all questions which may arise relative to the execution of this contract on the part of the contractor, and his estimates and decisions shall be final and conclusive."

After the completion of the work on June 17, 1889, the street commissioner made out a final estimate, showing the balance due to the plaintiff to be $21,627.73; but from this sum he deducted $6,820, claiming that the city was entitled to that deduction, under the provision of the contract above mentioned, on account of delay in completing the work.

*Barcroft & Bowen* and *David Murphy*, for plaintiff.
*Leverett Bell*, for defendant.

THAYER, J., (*after stating the facts as above.*)    *First.* The first question to be determined is whether the provision of the contract authorizing deductions from the contract price in case the work was not completed within one week and ten months after notice to begin the work had been given, was an operative provision when the street commissioner made his final estimate, or had become eliminated from the contract by the default of the city.    There can be no doubt that the duty rested on the city to construct and prepare the bridge piers for the erection thereon of the superstructure.    The contract bound the plaintiff to erect the bridge superstructure "on the present stone piers," in accordance with certain drawings; but did not, by any provision, obligate the plaintiff to do any work on the piers.    It is a necessary inference from all the terms of the agreement that the city undertook to provide such stone piers for the erection of the superstructure as the drawings disclosed. The city admits by its answer that the piers were not fully completed for the erection of the superstructure until November 12, 1888; hence, by the defendant's neglect the plaintiff was prevented from completing the work within one week and ten months from the time the notice to begin was given.    The result is that the provision awarding damages in a given sum should there be delay in completing the contract, was as effectually eliminated from the contract, as if the parties had canceled it by express agreement; and it is wholly immaterial whether we say the provision in question was waived, or that the defendant is estopped from insisting on the provision.    In either event, the result is the same.    The city, by its own default, having rendered performance impossible within the time limited, has lost its right to claim the deductions specified in the contract.    The law to this effect is well settled and fundamental. *Stewart* v. *Keteltas*, 36 N. Y. 388; *Weeks* v. *McCarty*, 89 N. Y. 566; *Starr* v. *Mining Co.*, 13 Pac. Rep. 195; *Mansfield* v. *Railroad Co.*, 6 N. E. Rep. 386; *Navigation Co.* v. *Wilcox*, 7 Jones, (N. C.) 481; *Dumke* v. *Puhlman*, (Wis.) 21 N. W. Rep. 820; *Jones* v. *Railroad Co.*, 14 W. Va. 523.

For an unreasonable delay in erecting the superstructure after the piers were fully completed, whereby the city sustained injury, it might perhaps be entitled to recoup damages on a counter-claim, but it has not framed its answer on that theory, and no decision on that point is necessary.    It has planted itself squarely on the contract, and insists upon

the penalty nominated in the bond, which, for reasons above stated, it is not entitled to.

*Second.* The next question is whether the eighth clause of the contract gave the street commissioner such broad powers as an arbitrator, that his decision on making the final estimate that the plaintiff was in law liable for liquidated damages, is conclusive between the parties, although manifestly erroneous. This question must be answered in the negative. The contract made the decision of the street commissioner conclusive as to all questions concerning the amount of work done, provided he acted in good faith, and with reasonable care and circumspection. With the same reservations that he acted in good faith and with reasonable care, it also made his decisions final as to all questions whether the work was done in accordance with the drawings and specifications, and was fully up to the standard of excellence mentioned therein. These were all questions of fact, depending for their correct solution on professional knowledge and skill; and the parties might reasonably and lawfully submit them to the determination of an arbitrator, and agree to be bound by his decision. *Wood* v. *Railway Co.,* 39 Fed. Rep. 52, and citations.

But the question which the street commissioner undertook to decide was purely a question of law, as to the effect which the failure of the city to have the bridge piers completed within one week and ten months after the notice was served, had upon its right to demand liquidated damages. I am satisfied that the contract, properly construed, did not commit that question to the determination of the street commissioner; it was wholly outside of his jurisdiction.

As the general denial contained in the answer was waived by counsel in open court, and the case was submitted under an agreement that the court, on the hearing of the demurrer to the answer, might enter such judgment as it deemed proper, in view of the allegations of the petition and the admissions contained in the answer, the demurrer to the answer is sustained, and judgment entered on the first count of the petition for $21,627.73, with interest at 6 per cent. per annum from June 17, 1889, to this date. On the second count, in which the plaintiff sues as on a *quantum meruit* for the same sum mentioned in the first count, the finding and judgment will be for the city.