[Civ. No. 12805. Second Dist., Div. Two.—June 13, 1941.]

TOM GOGO et al., Respondents, v. LOS ANGELES COUNTY FLOOD CONTROL DISTRICT, Appellant.

J. H. O'Connor, County Counsel, S. V. O. Prichard, Assistant County Counsel, and Ned Marr, Deputy County Counsel, for Appellant.

Stephen Monteleone, Wood, Crump & Rogers and Guy Richards Crump for Respondents.

WOOD, J.—Plaintiffs and defendant entered into a contract whereby plaintiffs agreed to do excavation and construction work for a dam. This action was commenced to recover a judgment for excavation work which they performed but which was not included in the contract. The action was tried without a jury and judgment was rendered in favor of plaintiffs for $59,590.80, from which judgment defendant has appealed.

Defendant published on April 6, 1937, a notice inviting bids for the construction of the spillway of San Gabriel Dam No. 1. Copies of the notice and of the plans and specifications were furnished to various contractors including plaintiffs. Item No. 6 of the bidding schedule called for: "General Excavation, Class F—52,000 cu. yds." The material provisions of the specifications are as follows:

"41. The quantities in the schedule are for comparing bids and may vary from the actual final quantities. Some quantities may be increased and others may be decreased. . . ."

"63. Excavation shall consist of the removal and final disposal of all materials of any nature including rock, earth and gravel, incidental to the construction of the proposed work, to the lines and grades shown on the drawings. . . . It should be noted that the West Slope Construction Company, under contract with the District for the construction of San Gabriel Dam No. 1, is conducting quarrying opera-

tions within the limits of the spillway site. *In general, these operations will result in rough excavation to grade and cross section for a portion of the spillway and approach channel,* but in no event will West Slope Construction Company excavate below the level of elevation 1400.'' (Italics added.)

"67. General excavation, Class F, shall comprise all excavation for the floor and side slopes of the approach channel; for the ogee section, except cutoff excavation; for the floor of the spillway channel; for the counterfort retaining walls . . . ; all excavation in Brown's Gulch Channel, except cutoff excavation; and any excavation not specifically classified elsewhere. . . . A portion of the spillway approach channel has already been excavated by the West Slope Construction Company. The excavation work required under this contract in the approach channel area shall consist of the removal of the remaining materials.''

After reading the specifications and before submitting their bid, plaintiffs proceeded to the site of the proposed work for the purpose of making an estimate of the type of material to be encountered in Class F excavation. They there met Mr. Stuver, the resident engineer employed by defendant, who accompanied them and pointed out the various places where excavation was to be done. Stuver stated that there would be very little excavation in the approach channel where the West Slope Construction Company was working at the time and that it would all be below the 1400 foot elevation. Later R. L. Basich went to the site on behalf of plaintiffs and made an estimate of the proposed excavation work, taking into account in his estimates the amount of material in the approach channel and spillway site below the 1400 foot elevation only. The amount of solid rock which would have to be excavated in Brown's Gulch was estimated by plaintiffs and Basich as approximately 10,000 cubic yards. The balance of the 52,000 cubic yards was estimated to be composed of either soft or loose material. Based upon these figures plaintiffs submitted a bid of 60 cents per cubic yard for the Class F excavation. Before the bid was accepted plaintiff Gogo asked Mr. Howell, the chief engineer employed by defendant, if he could tell just where the Class F excavation was and of what it consisted. The chief engineer replied that he could not but stated that he would send plaintiff out to the site of the work with Mr. Ream, the engineer who pre-

pared the plans and specifications. After they reached the job Mr. Ream told Gogo that the estimate of 10,000 cubic yards of solid rock excavation in Brown's Gulch was approximately right; and that such excavation would be below the 1400 foot elevation.

The contract for the work, providing for the excavation of approximately 52,000 cubic yards of Class F material was awarded to plaintiffs. During the prosecution of the work in accordance with the provisions of the contract plaintiffs discovered that the West Slope Construction Company had ceased their quarrying operations in Brown's Gulch with the consent of defendant at a point which was more than five feet above grade. Despite plaintiffs' protests that such work was not contemplated by the contract, they were required, because of defendant's threats to cancel the contract and hold plaintiffs liable for damages, to excavate above the 1400 foot elevation a total of 40,587 cubic yards of material consisting mostly of solid rock. The total Class F excavation amounted to 112,777 cubic yards, for which plaintiffs were paid at the contract price of 60 cents per cubic yard.

■ Plaintiffs did not waive their right to recover damages for the misrepresentation by continuing the excavation work under protest after discovering the falsity of the representation. "A party induced by a false representation to enter into a contract may proceed to perform it and sue for damages for the misrepresentation." (*Palmberg* v. *City of Astoria,* 101 Or. 224 [199 Pac. 630, 632, 16 A. L. R. 1125].) The theory underlying this rule is clearly stated in *Borough Const. Co.* v. *City of New York,* 200 N. Y. 149 [93 N. E. 480 at 483, 140 Am. St. Rep. 633], where it is said: "The underlying justice of the principle is that where a municipal representative having authority to speak for it and supposed to be familiar with such matters in apparent good faith and with a show of reason requires a contractor to do certain things as covered by his contract, the contractor, although protesting against the requirement, ought not to be compelled to refuse obedience and incur the hazard of becoming a defaulter on his contract even though it shall subsequently turn out that he was right and the municipal representative wrong in the dispute."

The contract between defendant and the West Slope Construction Company provided that the company was not to

excavate in Brown's Gulch on the site of the approach channel and spillway to a greater depth than five feet above grade. This fact was known to defendant at the time the plans and specifications for the Class F excavation were prepared but was not discovered by plaintiffs until after they were awarded the contract and had commenced operations. Plaintiffs had submitted their bid in reliance upon the provision of the specifications which provided that the West Slope Construction Company's operations would in general, "result in rough excavation to grade and cross section for a portion of the spillway and approach channel." Evidence was introduced to prove that the phrase "rough excavation to grade and cross section" was commonly understood by the engineering profession to mean excavation to a distance of from one-half to one foot above the fine or finished grade. That plaintiffs were not negligent in relying upon the above representation is evident for the testimony shows that plaintiffs investigated the site of the work and that in answer to their inquiries defendant's engineers confirmed plaintiffs' understanding that West Slope Construction Company would excavate to within approximately one foot of grade.

The court found that of the 40,587 cubic yards of rock which plaintiffs excavated above the 1400 foot elevation, they were required by their contract to excavate only 6,915 cubic yards. Based upon the evidence as to cost, the court found that the reasonable cost of removing the additional 33,672 cubic yards of material was $67,344, of which plaintiffs had received $20,203.20 at the contract rate of 60 cents per cubic yard, leaving a balance of $47,140.80 which defendant owed to plaintiffs. It was further found that plaintiffs were entitled to the sum of $12,450 which defendant had withheld from plaintiffs in accordance with the provisions of the contract for liquidated damages because of plaintiffs' failure to complete the work within the time limited by the contract.

In contending that the judgment is erroneous as a matter of law defendant relies upon the rule stated in *Powell* v. *State*, (Tex. Civ. App.) 118 S. W. (2d) 960, 965, that "where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered." It is asserted that plaintiffs were obligated by the contract to make "all excavation" necessary to complete the job, re-

gardless of the total amount or character thereof, and were only entitled to be paid for such excavation at the contract price of 60 cents per cubic yard. Such contention would be proper in the absence of any question of misrepresentation. The facts of *Powell* v. *State, supra,* may be distinguished from those of the present case for it is stated at page 962: "While appellant in the instant case alleged fraudulent misrepresentations by the Highway Department as to the quantities of rock and earthen material to be excavated, and that no tests were made upon which to base such estimates, no proof was offered as to this allegation, no bad faith charged against the engineers of the Highway Department. . . . '' In the instant case there is substantial evidence to sustain the court's finding that defendant fraudulently misrepresented to plaintiffs that the bulk of the Class F excavation would be below the 1400 foot elevation. Defendant and its engineers were aware of the fact that the West Slope Construction Company was required by its contract not to excavate closer than five feet above grade. Notwithstanding such knowledge, defendant made representations in its contract with plaintiffs to the effect that West Slope Construction Company would excavate a portion of the material to within approximately one foot of grade. Plaintiffs' belief that such representation was true was confirmed by defendant's engineers and the bid which plaintiffs submitted was based upon their belief that the expensive solid rock excavation represented only a small portion of the entire work. It is apparent that such misrepresentation was of a material fact, for plaintiffs were compelled to excavate nearly five times as much solid rock as they would have been required to excavate if the representations had been true. Plaintiffs proved that the actual cost of the additional excavation of solid rock was more than three times as great as the contract price of 60 cents per cubic yard.

The present case is very similar to *Maney* v. *Oklahoma City,* 150 Okl. 77 [300 Pac. 642, 76 A. L. R. 258], wherein plaintiff was allowed to recover damages for the extra work. In that case the plaintiff, who was the successful bidder, submitted his bid in reliance upon the representation in the plans and specifications that the excavation work would consist principally of the removal of earth and that there would be not more than 407 cubic yards of rock. The engineers for

the defendant city also advised the plaintiff that there was a very negligible quantity of rock. As the work progressed it developed that there was actually 60,000 cubic yards of rock which the plaintiff was required to excavate. The provisions of the contract under which the work was performed were similar to those involved in the contract here under consideration. The defendant city was held to be responsible for the reasonable value of such extra work upon the theory that the excavation of the large quantity of rock was materially different from the quantity which defendant had represented in its plans and specifications and that plaintiff had relied upon such representations in submitting his bid. ██ It may be stated generally that where the plans and specifications induce a public contractor reasonably to believe that certain indicated conditions actually exist and may be relied upon in submitting a bid, he is entitled to recover the value of such extra work as was necessitated by the conditions being other than as represented. (*Faber* v. *City of New York*, 222 N. Y. 255 [118 N. E. 609]; *Pitt Construction Co.* v. *City of Alliance*, 12 Fed. (2d) 28 (Ohio); *Hollerbach* v. *United States*, 233 U. S. 165 [34 Sup. Ct. 553, 58 L. Ed. 898]; *Salt Lake City* v. *Smith*, 104 Fed. 457 [43 C. C. A. 637] (Utah); *Palmberg* v. *City of Astoria, supra*.) The facts of the instant case bring it within the foregoing rule.

The authorities are divided concerning the theory upon which recovery is allowed in this type of case. Some cases, such as *Faber* v. *City of New York, supra,* permit the contractor to recover on the theory of breach of contract because he was compelled to perform work not contemplated by the contract. However, the correct basis of recovery is on the theory that the action is one to recover damages for the misrepresentation by which the contract was induced. (*Hollerbach* v. *United States, supra; Maney* v. *Oklahoma City, supra,* and *Pitt Construction Co.* v. *City of Alliance, supra.*) It would be inequitable to permit defendant to enforce the literal terms of the contract which called for the excavation of ''all materials'' necessary to complete the job when plaintiffs were induced by defendant's misrepresentation to submit a bid which was much lower than was warranted by the true facts. If instead of stating in the specifications that West Slope Construction Company would excavate to rough grade, defendant had stated the true facts of which it had

knowledge—that West Slope Construction Company was obligated by contract to excavate no lower than five feet above grade—the present situation would not have arisen. Having failed to impart this knowledge to plaintiffs and having wilfully or carelessly misrepresented the true situation, defendant is obligated to plaintiffs for the additional work occasioned.

The complaint in this action contained three separate counts, by each of which plaintiffs sought to recover damages for performing the additional excavation work. By the first count recovery was sought for the loss occasioned by defendant's misrepresentation. The second count is a common count for the reasonable value of additional work performed at the instance and request of defendant. The third count proceeds upon the theory that defendant was obligated by contract to excavate the extra material above rough grade and seeks damages for breach of contract because of defendant's failure to perform such obligation. Although it is true, as contended by defendant, that the causes of action are inconsistent, it is unnecessary to determine whether all counts are legally sufficient or whether the court erred in denying defendant's motions for nonsuit as to the several counts. The judgment is supported by the cause of action set forth in count one, which we have decided is the correct theory of recovery, and that count is supported by substantial evidence. If a judgment is sustained by one of several counts in a complaint which is supported by substantial evidence, it will not be reversed because of the insufficiency of the evidence as to other counts of the complaint. (*Martin* v. *Los Angeles Turf Club, Inc.*, 39 Cal. App. (2d) 338 [103 Pac. (2d) 188].)

It is unnecessary to pass upon the contention that defendant, being a political subdivision of the government, is not bound by the statements of its engineers, for the judgment is properly based upon the misrepresentation made in the specifications and in the contract by the duly authorized officers of defendant. Evidence of the conversations between plaintiffs and defendant's engineers was properly received in any event, since such conversations tended to prove that plaintiffs were justified in relying upon the misrepresentation in the specifications and were not negligent in failing to discover the true facts.

We are asked to reverse the judgment because the court failed to separately state its conclusions of law and findings of fact and therefore did not comply with section 632 of the Code of Civil Procedure. It is settled that the statutory requirement that findings of fact and conclusions of law shall be separately stated is merely directory (*Gustafson* v. *Blunk*, 4 Cal. App. (2d) 630 [41 Pac. (2d) 953]), and if a judgment is manifestly right it will not be reversed because of the intermingling of findings of fact and conclusions of law. (*Morris* v. *Turley*, 94 Cal. App. 691 [271 Pac. 916].) In the present case the court included in its findings of fact conclusions of law regarding defendant's liability. Under the heading "Conclusions of Law" appears the following: "That the plaintiffs . . . are entitled to a judgment against the defendant . . . for the sum of $59,590.80 and for costs of suit herein incurred". Defendant has not suffered prejudice because of the method adopted by the court in preparing its findings of fact and conclusions of law.

By count four of the complaint plaintiffs sought to recover the amount of liquidated damages which had been withheld by defendant because of plaintiff's failure to complete the work within the time limited by the contract. The contract provided that the work was to be completed within 120 days but plaintiffs actually required 369 days to finish the job. Under the contract provision for liquidated damages of $50 per day for every day of delay, defendant withheld $12,450 from the amount due plaintiffs as damages for the 249 day delay. The evidence shows that the first 40 day delay was occasioned by defendant's failure to cause the West Slope Construction Company to remove from the site and thus permit plaintiffs to commence operations. An additional delay of at least 40 days was caused by the fact that plaintiffs were required to excavate 112,000 cubic yards instead of approximately 52,000 cubic yards of material of the character represented in the specifications and contract. Because of a severe storm plaintiffs were delayed another 37 days. The chief engineer employed by defendant concluded that for these reasons liquidated damages for at least 113 days ($5,650) should be waived, and recommended such action to defendant. His authority rests in the following provision in the specifications: "On all questions relating to . . .

the proper execution, progress or sequence of the work. . . . the decision of the Chief Engineer shall be final and binding. . . . '' The finding of the court to the effect that defendant waived its claim to $5,650 is attacked on the ground that the chief engineer lacked authority to bind defendant by his acts. The judgment may be upheld without regard to the finding of waiver, for the record discloses that plaintiffs made substantial compliance with the statutory provisions requiring the filing of claims. In one claim plaintiffs made demand ''for the sum of $93,104.85, being for work performed and not paid for. . . . '' In a separate claim plaintiffs made special mention of the sum withheld as liquidated damages, ''amounting to $12,450''. It is asserted that ''claim is made for the full amount'' and that ''of said amount $5,650 was waived''. This claim was evidently filed in the belief that the sum of $5,650 had been regularly allowed. The fact that it is stated in the first paragraph that the ''demand'' is ''for the sum of $6,800'' does not justify a ruling that plaintiffs failed to make substantial compliance with the statutory requirements.

It is finally asserted that in any. event plaintiffs are not entitled to recover the entire $12,450, because, discounting the total delay caused by defendant's acts, plaintiffs still did not complete the job within 120 days. In making this contention defendant seeks to have this court apportion the amount of delay attributable to each and to fix damages accordingly. The correct rule is that where such delays are occasioned by the mutual fault of the parties the court will not attempt to apportion them but will refuse to enforce the provision for liquidated damages. (*Jefferson Hotel Co.* v. *Brumbaugh,* 168 Fed. 867 [94 C. C. A. 279] ; *Champlain Construction Co.* v. *O'Brien,* 117 Fed. 271 (Vt.).) It is stated in the Champlain case at page 277 : ''There is no way for summing up the defaults of each and apportioning the damages to them, but the whole must be allowed or none; and, as all cannot be, none must be. These deductions must therefore be restored.'' By its own act defendant rendered performance within the time limited by the contract impossible and has therefore lost its right to claim the liquidated damages provided in the contract. (*King Iron Bridge & Mfg. Co.* v. *City of St. Louis,* 43 Fed. 768 [Mo.] [10 L. R. A. 826].)

It follows that plaintiffs were properly awarded the total amount of liquidated damages withheld by defendant.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied by operation of law, and appellant's petition for a hearing by the Supreme Court was denied August 11, 1941.