[Civ. No. 19634.   First Dist., Div. One.   Apr. 21, 1961.]

LONDON GUARANTEE AND ACCIDENT COMPANY, LIMITED (a Corporation), Plaintiff and Appellant, v. LAS LOMITAS SCHOOL DISTRICT OF SAN MATEO COUNTY, Defendant and Appellant.

Bohnert & McCarthy and Bohnert, Davis & McCarthy for Plaintiff and Appellant.

Keith C. Sorenson, District Attorney, and Howard E. Gawthrop, Deputy District Attorney, for Defendant and Appellant.

HOYT, J. pro tem.*—Defendant-appellant Las Lomitas School District of San Mateo County contracted with the firm of Achterman and Olesen for the construction of the Ladera Elementary School. In the course of construction Achterman and Olesen encountered financial difficulties and were unable to complete the work. Plaintiff, cross-appellant, London Guarantee and Accident Company, Limited, having written the faithful performance bond, assumed the contractor's obligations under the contract and completed it.

The contract originally called for completion on April 29, 1953, but the time was extended 22 days to May 21, 1953. The contract contained a liquidated damages clause which provided $25 per day for each day's delay in the completion of the work. The trial court found that there were 107 days of

---

*Assigned by Chairman of Judicial Council.

delay. The school district had previously determined that there were 154 days of delay and accordingly had deducted $3,850 as liquidated damages from the final payment to London Guarantee. In support of its finding of 107 days of delay the trial court found that the contract was "substantially completed" on September 5, 1953; that the district wrongfully failed to make payment of $1,175 that became due on October 10, 1953; and that that amount plus interest from that date was owing to London Guarantee. Judgment was rendered accordingly.

The defendant school district appealed from this judgment and the London Guarantee cross-appealed. The London Guarantee Company claims that no damages should be assessed. The trial court applied a theory of "substantial completion." The school district seeks damages up to the time of actual completion.

The London Guarantee relies upon *Gogo v. Los Angeles etc. Flood Control Dist.*, 45 Cal.App.2d 334 [114 P.2d 65]. That case establishes the following rule concerning liquidated damages: "The correct rule is that where such delays are occasioned by the mutual fault of the parties the court will not attempt to apportion them but will refuse to enforce the provision for liquidated damages." (P. 344.) On conflicting evidence the trial court in effect found that there was no fault on the part of the school district and that the liquidated damage clause was valid and applicable. If the trial court had found that there was fault on the part of the school district it would not have allowed the school district to retain any liquidated damages. It approved liquidated damages for 107 days.

The London Guarantee Company also contends that the findings do not support an award of liquidated damages because while the trial court found the allegations of paragraph two of the affirmative defenses of the school district to be true, "That in said agreement made as alleged on the 26th day of September, 1952, it was provided that the amount of damages that the defendant would sustain by reason of delay in the completion of the contract would be impractical or extremely difficult to determine, and that the contractor would pay to defendant the sum of $25.00 per day for each and every day that work remained uncompleted beyond the time specified in the contract for completion as and for liquidated damages,"

the trial court did not find on the allegation of defendant's answer, "That defendant suffered substantial damages by reason of said delay in completing the contract and the amount of such damages are impractical and/or extremely difficult to determine."

A similar problem was involved in *Pry Corp. of America* v. *Leach*, 177 Cal.App.2d 632 [2 Cal.Rptr. 425]. In that case the court said: "The finding that the use by defendants of the trade name 'Pry' on any product other than that manufactured from the control mixture supplied by plaintiffs, or the using or marketing of the product 'Pry' without the use of the control mixture supplied by plaintiffs, would result in great loss to plaintiffs, and that injunctive relief is necessary to prevent a multiplicity of judicial actions, is tantamount to a finding that Leach used plaintiffs' trade name 'Pry' on products which did not contain such control mixture after November 9, 1957." (Pp. 636-637.)

■ "Findings must be liberally construed to support the judgment. (*Johndrow* v. *Thomas*, 31 Cal.2d 202, 207 [187 P.2d 681]; *Kaye* v. *Tellsen*, 129 Cal.App.2d 115, 119 [276 P.2d 611].) ■ Uncertainties in the findings should be resolved in such manner as to uphold, rather than defeat, the judgment. (*Aguirre* v. *Fish & Game Com.*, 151 Cal.App.2d 469, 474 [311 P.2d 903].) ■ A judgment will not be reversed for a failure to find on some of the issues if the omitted finding is implicit in the express findings. (*Sears, Roebuck & Co.* v. *Blade*, 139 Cal.App.2d 580, 592 [294 P.2d 140]; *Zeller* v. *Browne*, 143 Cal.App.2d 191, 193 [299 P.2d 315].)'' (*Pry Corp. of America* v. *Leach, supra*, 177 Cal.App.2d 632, 636.)

■ "A party may not complain of the failure of the court to make a finding that would necessarily have been adverse to him. (*Goldberg* v. *Paramount Oil Co.*, 143 Cal.App.2d 215, 224 [300 P.2d 329].)'' (*Pry Corp. of America* v. *Leach, supra*, at p. 637.)

■ The implied finding that defendant suffered substantial damage by reason of said delay in completing the contract and the amount of such damages is impractical and/or extremely difficult to determine is supported by the evidence.

■ Was the contract completed on September 5, 1953? The trial court did not find that the building was completed on that date. It found that it was "substantially completed."

On September 8, 1953, the uncontradicted evidence shows that some of the class rooms were insufficiently complete to be used; the plumbing was not complete; and the fencing of the playground had not been started. There were workmen in the building and there was grading equipment in the yard area. The salary of the inspector for the school district, who was required by state law, had to be paid until October 22, 1953. The inspector's report made on September 1, 1953, showed that the work was 94 per cent complete as of that time. His report made on September 16, 1953 showed the work to be 96 per cent complete. On September 16 there was admittedly about $9,800 worth of work yet to be done. The contract called for a complete building and not a substantially complete one.

The fact that the school district occupied portions of the building on September 8, 1953, does not change the situation. Section A, "General Conditions," paragraph 71, plaintiff's Exhibit 1, provides that occupancy of any portion of the building ". . . shall not constitute an acceptance of any part of the work, unless so stated in writing by the Board of the District." (Pl. Ex. 1, General Conditions, p. 11.) The board of the district did not so state.

On September 25, 1953, the inspector on the job sent to the architect three pages of things yet to be done on the contract and stated "Due to the amount of work to be completed the following items are not to be considered the final punch list." On October 22, 1953 the architect issued change order No. 3 giving certain credits to the contractor and certifying "Actual completion date: 10-22-53." The architect's certificate of completion was conclusive in the absence of fraud or gross mistake. (Ex. 1, General Conditions, par. 4 and par. 69.) *Roberts* v. *Security Trust & Savings Bank,* 196 Cal. 557 at pp. 572-573 [238 P. 673]; *American-Hawaiian Eng. etc. Co.* v. *Butler,* 165 Cal. 497, 513 [133 P. 280, Ann.Cas. 1916 C 44].) We must, therefore, conclude that the school district was entitled to liquidated damages from April 29, 1953, to October 22, 1953; that is 154 days at $25 per day, or $3,850. This is the amount withheld by the school district; consequently no interest is involved. Accordingly the judgment is reversed. Defendant to recover costs on appeal.

Bray, P. J., and Tobriner, J., concurred.