[Civ. No. 68443. Second Dist., Div. Five. Mar. 14, 1984.]

SEVKIJA VRGORA, Cross-complainant and Appellant, v.
LOS ANGELES UNIFIED SCHOOL DISTRICT,
Cross-defendant and Respondent.

**COUNSEL**

William R. Robison for Cross-complainant and Appellant.

De Witt W. Clinton, County Counsel, and Richard K. Mason, Deputy County Counsel, for Cross-defendant and Respondent.

**OPINION**

**STEPHENS, J.**—Sevkija Vrgora appeals from a superior court judgment determining that he was liable for certain liquidated damages, pursuant to a contract he entered into with the Los Angeles Unified School District (hereafter LAUSD or respondent) for the construction of an automotive service facility. He contends that the entire amount of damages or a portion thereof was improperly assessed as a matter of law because: (1) LAUSD failed to disclose a condition material to the work he was to perform prior to their entering into the agreement; (2) any damages resulting due to delay were not apportionable to him because he was not entirely responsible for the delay; and (3) LAUSD used the completed portion of the facility prior to acceptance of the project as a whole.

Finding, for the most part, that these arguments are predicated upon conflicting evidence, we must affirm the judgment.

## FACTS

Appellant Vrgora, a general contractor, was the successful bidder for the construction of an "automotive service shed" at the West Valley Occupational Center in Woodland Hills, operated by LAUSD. In January 1977, Vrgora and LAUSD memorialized their agreement in writing. The agreement specified, inter alia, that LAUSD would pay Vrgora a total of $160,000 for work that would be completed in 180 days from commencement, and that liquidated damages would be assessed at a rate of $100 per day for late completion. The agreement was subsequently modified by a series of change orders requested by LAUSD, the sum of which increased the total contract price to $167,195.09, and extended the time for completion by 70 days, to a total of 250 days.

For the $160,000, Vrgora agreed to construct a covered carport to house vehicles worked on and, in addition, a specially enclosed concrete block room outfitted with a $30,000 "Sun Road-A-Matic" electronic vehicle performance tester.

Vrgora commenced construction of the two-part structure on January 31, 1977, with an expected completion date of July 29, 1977. On March 21, 1977, Sun Electric Corporation (hereafter Sun), the manufacturer of the vehicle performance tester, applied for certification of its product from the City of Los Angeles Test Laboratory. Several months later, on September 23, 1977, the now modified machine was approved by the testing agency. However, it was approximately three weeks after the scheduled October 10 completion date that Vrgora first claims he received oral notification of the approval and ordered delivery of the machine to the construction site.

On November 15, 1977, when the vehicle performance tester reached the construction site, Sun demanded immediate payment from Vrgora. Vrgora was unable to comply with said demand and requested LAUSD assign a portion of his contract proceeds to Sun. In the meantime, the machine was removed from the site. After approval of the assignment, Sun redelivered the machine on December 22 or 23. Thereafter, Vrgora installed it and finished the project.

On May 2, 1978, some seven months after the scheduled date of completion, as amended, LAUSD officially accepted physical completion of the construction and in September 1979, upon completion of a review, assessed and withheld from payment, $20,700 as liquidated damages.

Sun provided the impetus for this action by filing suit against Vrgora in the municipal court for moneys owed as a result of price increases on the

machine between the date of first quotation and delivery. Vrgora removed the case to superior court by filing a cross-complaint for declaratory relief and breach of contract. Thereafter, having completed the claims procedures pursuant to Government Code section 910 et seq., Vrgora amended his cross-complaint to include LAUSD, seeking, among other things, the amount of liquidated damages withheld by the latter.

Vrgora and Sun reached an out-of-court settlement and the remaining issues arising out of Vrgora's cross-complaint against LAUSD were tried and submitted to the court.

On May 20, 1982, the court issued its intended decision in favor of LAUSD. Specifically, the court concluded that ". . . the liquidated damages provision in the contract [was] valid under the circumstances of [the] case, . . . considering the nature of the contract, the work contemplated, and the intended purpose of the construction.[1] Judgment in accord with the above stated intention was entered on August 3, 1982. Vrgora's motion to vacate the judgment was heard and denied on September 28, 1982. On October 12, 1982, Vrgora filed his notice of appeal.

### DISCUSSION

██ "A judgment . . . of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 235, p. 4225; italics in original; *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) "The presumption being in favor of the judgment . . ., the court must consider the evidence in a light *most favorable to the prevailing party,* giving him the benefit of *every reasonable inference,* and *resolving conflicts* in support of the judgment." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 245, p. 4236; italics in original.)

With the foregoing fundaments in mind, we examine appellant Vrgora's contentions of error.

---

[1]Also in its intended decision, the court observed: "[¶] It's obvious from the evidence that cross-complainant in preparing and submitting his bid to the School District, did not thoroughly or competently evaluate the job specifications and the needs of the School District. Further, once he obtained the contract, he neglected to devote the time, attention, manpower, and supervision required to timely and satisfactorily perform. His contentions in this case are not supported by the evidence. On the contrary, the School District has amply documented its contentions and justified its retention of funds. No one forced the cross-complainant to submit his bid or enter into the contract. Since he did so freely and voluntarily he was obligated to perform according to the contract, and he obviously did not. Consequently, he must bear the loss."

## I

In essence, Vrgora first argues that no justification for the liquidated damages assessment exists because the delay resulting in same is attributable to LAUSD's failure to forewarn him of anticipated difficulties in obtaining approval of the vehicle performance testing machine. More specifically, Vrgora suggests that prior to submitting his bid on the underlying contract, he was never placed on notice nor under a duty to discover whether or not he could anticipate problems in obtaining the appropriate test lab approval for the testing machine. Further, he asserts that the architect responsible for the project plans (including specific reference to the subject machine), not only knew that the machine was unapproved, but also knew that another machine of the same type suffered serious and lengthy approval problems.

Although it might appear easy to attribute merit to the above argument, as appellant presents it, the record belies any such contentions.

The evidence in the form of testimony and exhibits, as introduced at trial, establishes that there has never been any mystery surrounding the fact that the purpose of the contract was to construct both an edifice housing a vehicle performance tester as well as a structure to park cars to be tested or otherwise worked on. In that same vein, a portion of the contract appropriately entitled "DIVISION 11 [¶] SECTION 11D [¶] VEHICLE PERFORMANCE TESTER" clearly provides under the subheading of "EQUIPMENT" that: ". . . The vehicle performance tester shall be the Sun Road-A-Matic Model RAM 937-1, 460 Volt, 30, as manufactured by the Sun Electric Corporation. All electrical equipment shall have UL Label or City of Los Angeles Test Laboratory Label."

If anything, it appears that the foregoing proviso was such that it should have aroused, at the very minimum, the suspicions of any prospective contract bidder, that by so bidding or otherwise agreeing to the contract, that party was affirmatively undertaking to ensure the subject machine's compliance with the qualifications specified by LAUSD. Thus, appellant knew or had reason to inquire as to the exact nature of his obligations at the very inception of the contract.

In addition to the notice provided by the contract itself, the evidence overwhelmingly suggests that appellant Vrgora was reapprised of his duty to ensure laboratory approval of the machine in question, on numerous occasions, prior to and during his performance. We find particular significance with the fact that on January 24, 1977, approximately a week before Vrgora commenced his performance, that party was reinformed at a "Job Start Meeting" of the crucial importance of the machine's laboratory ap-

proval.[2] Equally significant is evidence that LAUSD took it upon itself on February 2, 1977, to contact the machine's manufacturer, Sun, informing the latter that its product must be laboratory approved because, as witness Moore testified, ". . . we wanted to be doubly sure that it would happen. And because quite frankly, it didn't seem to register with the general contractor." The record also evidences that appellant was further advised of his obligation by letter on February 10, 1977, and again on February 24, 1977.

The second prong of appellant's initial argument is that at the time of the bidding, LAUSD knew or had reason to know, by and through its employee, architect Moore, that the machine had not been test lab approved, and that a similar machine had been approved only after serious and lengthy problems. Contrary to this charge is the testimony of architect Moore. During cross-examination, Mr. Moore was asked if he had encountered any difficulty in getting approval of a similar machine at North Valley. Admitting that problems were encountered, he was then asked: "So that you knew at least on this occasion because of your experience at North Valley that there was a problem getting City Test Lab approval for the particular model; didn't you?" Mr. Moore responded by stating:

*"The two things were running almost concurrently.* The one at North Valley had been specified, bid and was under construction and was—they were in the process of getting approval on it [the vehicle performance tester].

*"At the same time we had designed and specified it at West Valley. We didn't know that there were going to be these lengthy problems. We did not know at that time because those problems were only occurring when the project at West Valley started construction."* (Italics ours.)

In light of the evidence outlined above, it is manifest that neither artifice nor sleight of hand nor ambiguity played any part in inducing appellant Vrgora to bid and accept the instant contract. In fact, the record makes it quite clear that Vrgora entered into the contract wholly on his own volition and that he had ample notice so as to reasonably foresee the material portions of his anticipated performance *at the formative stages of the contract.* If at all, the mistake of material or collateral fact, at which appellant hints, must be attributed to his own neglect. Furthermore, the evidence blatantly suggests that LAUSD did not possess any "special knowledge" by which it

---

[2]LAUSD's architect testified: ". . . we stressed very carefully that we had to have the complete shop drawings in as soon as possible, and that we would check them and return them as soon as possible, because it [the vehicle performance tester] was a critical item that had to be approved and ordered immediately to meet the time lines on this project."

was affirmatively obligated to cure appellant's so-called carelessness or dereliction of duty. Thus, as a matter of law, it was appellant's duty to discover the foreseeable problems affecting his performance, and any "hinted" claim of impracticability or frustration of performance which might discharge said duty is meritless.

## II

Without conceding the lack of validity of his earlier contention, appellant acknowledges that "at least" some evidence supports a finding that he was partially responsible for the construction delays. In turn, appellant contends that case authority mandates a denial of all liquidated damages or possibly an apportionment of fault for the delay resulting in a division and reduction of liquidated damages.

Appellant predicates his argument on the supposition that the delay was the mutual fault of LAUSD and himself.[3] Unfortunately, as we have determined previously, this supposition is invalid. Hence, we are bound by the precept of appellate review mandating our resolution of the evidence in favor of the judgment below, and as indicated previously, necessarily finding that the subject delays were totally due to Vrgora's carelessness.

## III

Appellant's final argument rests with the fact that LAUSD actually used and occupied a portion of the facility prior to its completion. With this premise, appellant insists that LAUSD should not be allowed to claim full liquidated damages.[4] Particularly, appellant maintains that "[i]f the specified daily rate is a reasonable approximation of the amount necessary to compensate [LAUSD] because [it] cannot occupy the entire building, then, presumably, it would not be a reasonable approximation as to only a portion of the building when another portion is actually occupied." Although at first blush the argument appears plausible, appellant's logic is flawed.

Under California law, liquidated damages are viable if it is established that at the formative stages of the contract: (1) it was mutually recognized that damages from a breach would be impracticable or extremely difficult to determine with certainty; and (2) that the amount or formula

---

[3]Vrgora relies upon the case of *Gogo v. L. A. etc. Flood Control Dist.* (1941) 45 Cal.App.2d 334, 344 [114 P.2d 65], in which it was stated: "The correct rule is that where such delays are occasioned by the mutual fault of the parties the court will not attempt to apportion them but will refuse to enforce the provision for liquidated damages."

[4]It is uncontested that LAUSD made use of a portion of the facility prior to its actual acceptance of same as completed.

stipulated by the parties represented a reasonable endeavor to ascertain what such damages might be. (See *McCarthy* v. *Tally* (1956) 46 Cal.2d 577, 586 [297 P.2d 981]; Civ. Code, § 1671.) In the context of a public construction contract, it has often been determined as a matter of law that contractor-induced damages, described as "inconvenience and loss of use by the public" are incalculable. (*Westinghouse Electric Corp.* v. *County of Los Angeles* (1982) 129 Cal.App.3d 771, 783 [181 Cal.Rptr. 332].) Further, this type of liquidated damages provision is legislatively presumed valid ". . . unless manifestly unreasonable under the circumstances existing at the time the contract was made." (Gov. Code, § 53069.85.)

In the case at bench, it is most evident that at the formative stages of the contract, damages in the event of a breach could not have been ascertained with any reasonable degree of certainty. Moreover, the per diem assessment does *not* appear manifestly unreasonable. Yet, with the use of double negatives, appellant ostensibly argues that the above authority mandates a finding that the liquidated damages formula in the contract is a reasonable approximation of the actual damages incurred by LAUSD. To hold as such, however, would thwart one of the major purposes of the allowance of liquidated damages—to provide a remedy—where damages are not easily ascertainable.

Thus, while liquidated damages must fit within the conventions of reason, they are not necessarily approximations of actual damage suffered. Correlatively, apportionment of an arguably arbitrary sum could not qualify as a true aliquot apportionment of damages in any real sense of the word.

Lacking any authority, appellant asserts "that something is wrong here" and "[i]t does not make sense to compensate the owner for the loss of use of something that it is actually using." For all practical purposes, we perceive appellant as attempting to invoke the equitable doctrine of unjust enrichment and therein seek a setoff. The No. 1 problem with the applicability of said theory is that although LAUSD may have benefitted by using the facility, the fact that the facility had not been fully or even substantially completed suggests that the enrichment obtained is de minimis[5] or is at best undefinable.

There appears, at present, to be a split of authority regarding enforcement of liquidated damages when fault for delay can be apportioned between the

---

[5]The record is replete with evidence that at the time of occupation by LAUSD, the facility was not equipped with the essential vehicle performance tester. Neither was the facility equipped with a contracted-for "intrusion alarm system."

parties to a public construction project.[6] However, one of the featured cases provides persuasive authority against the validity of an unjust enrichment/apportionment argument in the context of a liquidated damages dispute, such as ours.

In *London Guar. & Acc. Co.* v. *Las Lomitas School Dist., supra,* 191 Cal.App.2d 423, the appellate court reviewed the efficacy of an "adjusted" liquidated damages award by the trial court on the basis of the date of "substantial completion" as opposed to "actual completion." Acutely similar to the instant matter, the dispute in *London Guarantee* involved a contract for the construction of a school building in which the school district sought certain previously agreed upon liquidated damages for construction delays. The appellate court determined, somewhat by implication, that the trial court had found no contributory fault on the part of the school district for delay which, pursuant to the holding of *Gogo* v. *Los Angeles etc. Flood Control Dist., supra,* 45 Cal.App.2d 334, 344, would have made *any* liquidated damages unawardable. The appellate court reversed the trial court's judgment, finding no validity to the argument employed at trial, that once the contractor had substantially performed his obligation (96 percent completion of the building), the school district was not entitled to liquidated damages. In effect, the court held that since the parties contracted for "actual" performance in the form of a ". . . complete building and not a substantially complete one" (*id.,* at p. 427), liquidated damages were appropriate.

For our purposes, we find it significant that the appellate court's award was made *notwithstanding the fact that the school district occupied and used some of the school rooms.* It seems reasonable to conclude the *London Guarantee* court found that the "preestimate" of damages resulting from delay, embodied in their liquidated damages clause, took into account more uncertain elements of injury than the mere rental value of the building to be constructed.[7] (See 5 Corbin on Contracts (1964) Liquidated Damages,

---

[6]*Gogo* v. *L. A. etc. Flood Control Dist., supra,* 45 Cal.App.2d at page 334 (holding no enforcement of liquidated damages where mutual fault for delays); *London Guar. & Acc. Co.* v. *Las Lomitas School Dist.* (1961) 191 Cal.App.2d 423 [12 Cal.Rptr. 598] (holding enforcement of liquidated damages where nonexistence of mutual fault for delays); *Jasper Construction, Inc.* v. *Foothill Junior College Dist.* (1979) 91 Cal.App.3d 1, 13-15 [153 Cal.Rptr. 767]; *Nomellini Constr. Co.* v. *State of California* ex rel. *Dept. of Wat. Resources* (1971) 19 Cal.App.3d 240, 245-246 [96 Cal.Rptr. 682] (upholding enforcement of liquidated damages based upon apportionment of fault for delay).

[7]Courts in other jurisdictions are in substantial accord that rental and other value of a school facility is extremely difficult if not impossible to measure. (*East Arkansas Lumber Co.* v. *Swink* (1917) 128 Ark. 240 [194 S.W. 5]; *Abel Constr. Co.* v. *School District of Seward* (1972) 188 Neb. 166 [195 N.W.2d 744]; see also Annot., Per Diem Payments for Delay (1982) 12 A.L.R.4th 891, 919.)

§ 1072, ch. 58, p. 405; see also 5 Williston on Contracts (3d ed.) § 785, pp. 733-734.)

Similar logic dictates that the amount of enrichment "tortiously acquired" by LAUSD could not have been determined at the formation of the contract, nor could it be determined, with any reasonable degree of certainty, now. For that reason alone, it must be presumed that certain direct or indirect benefits which might be enjoyed by the public entity, even though delay and breach were due to no fault of that party, were considered by the contracting parties. Accordingly, it follows that in agreeing to the liquidated damages provision in the subject contract, appellant "bargained away" any offsetting claim he may have had for LAUSD's unjust enrichment at his expense.[8]

## CONCLUSION

■■■ Because the judgment is supported by substantial evidence in the record, an implicit finding that appellant was sufficiently on notice that the vehicle performance tester's laboratory approval was his contractual responsibility negates his contentions to the contrary. Likewise, substantial evidence requires that we affirm an implicit finding that appellant was the sole source of any delays and thus was obligated under the terms of the contract for the agreed liquidated damages. ■■■ Finally, the fact that actual injury is uncertain militates against any "setoff" due to possible unjust enrichment of LAUSD.

The judgment is affirmed.

Feinerman, P. J., and Hastings, J., concurred.

---

[8]Absent any evidence to the contrary, we presume that the contract before us was *not* a contract of adhesion and that the liquidated damages clause was *not* a penalty.