[Civ. No. 25560. First Dist., Div. One. Apr. 21, 1970.]

BILARDI CONSTRUCTION, INC.,
Plaintiff, Cross-defendant and Respondent, v.
SAMUEL R. SPENCER, Defendant, Cross-complainant and Appellant;
CITY OF MORGAN HILL, Cross-complainant and Appellant.

772

## COUNSEL

Byers & Jacobs and Bruce M. Jacobs for Defendant, Cross-complainant and Appellant.

Ernest Rusconi, City Attorney, for Cross-complainant and Appellant.

Frederick H. Pearson, Jr., for Plaintiff, Cross-defendant and Respondent.

## OPINION

**SIMS, J.**—Cross-defendant, the City of Morgan Hill, a municipal corporation, has appealed from a judgment which awarded cross-complainant, Samuel R. Spencer, the general contractor for improvement work conducted under the provisions of the Municipal Improvement Act of 1913, interest in the sum of $1,089.33 as damages for payments made after the due date under the contract, and a balance of $4,800.57, together with interest from the date of the last payment received from the city. The action was commenced by a subcontractor, Bilardi Construction, Inc., a corporation, as

plaintiff to recover the balance due from the general contractor as defendant.[1] It was stipulated that the subcontractor was entitled to $1,276.18 interest as damages for delay in payments actually made to it, and a balance of $7,837.53 together with interest from the date of the last payment received from the general contractor. In order to protect his rights against the subcontractor in the event the city's appeal is successful, the general contractor has appealed from the judgment in favor of the subcontractor.

The city contends: (1) that judgment against it is erroneous because the general contractor cannot recover a general judgment against the city, but only a judgment against such funds as may be available in the special fund created by the sale of bonds authorized under the improvement proceedings; and (2) that the trial court erroneously refused to permit the city to produce evidence to show that it was entitled to liquidated damages from the general contractor for failure to complete the work of improvement within the time fixed in the contract. The general contractor asserts that the city cannot raise the special fund doctrine for the first time on appeal, and, with respect to the second issue, that the city failed to plead an affirmative defense or cross-complaint for liquidated damages, that the trial court properly refused to permit an amendment of the pleadings at the time of trial, and that the payments made by the city after completion, without mention of damages for delay, constituted a waiver of any such claim. Since the issue of damages for delay was in fact set forth in the pretrial order, the case involves the question of the extent to which the provisions of the pretrial order supersede the pleadings.

■■■ It is concluded that the city cannot on the record in this case attempt to limit the judgment to the proceeds of a special fund, and that the trial court erred in refusing to receive evidence on and resolve the issues framed by the pretrial order. The judgment must be reversed.

*Special Fund Doctrine*

None of the pleadings filed by the city contained any reference to the theory that if one of the claimants were successful recovery could only be had from a special fund. The pleadings do reveal, however, that the agreement between the general contractor and the city contained the following paragraph: "9. *Liability:* The costs of said work and improvements will

---

[1]At some stage of the proceedings this action (No. 174256) was consolidated with an action by another subcontractor which involved the same work of improvement and most of the same parties (No. 179611). These cases were subsequently severed and the latter action was remanded to the appropriate municipal court. The general contractor's cross-complaint, which does not appear in the clerk's transcript of this case, may have been filed in the latter action, and been erroneously deleted from this record.

be paid from the proceeds of the construction fund created by the City under the Municipal Improvement Act of 1913 pursuant to said Resolution of Intention. In no case will the City be liable for any part of the costs thereof other than from the moneys in said construction fund, excepting where it has been provided in said Resolution of Intention, or by subsequent resolution of the City Council of said City providing for the making of a contribution to said construction fund, in which case the liability of the City shall be limited to the amount of said contribution. Under the terms of said Act, the amounts of assessments paid in cash and the proceeds of the bonds issued upon the unpaid assessments thereof will be deposited in said construction fund."[2]

The pretrial conference order recites: "It is further the position of the City of Morgan Hill that any judgment obtained must be paid out of monies raised by the Assessment District and not from the general funds of the City." This statement, which immediately precedes the listing of the three issues which are reviewed below, was not carried forward as an issue to be determined at the trial of the case.

The city did not raise the point at the trial. An argument did develop as to whether the final contract payment became due 35 days after the certificate of completion was recorded, or 35 days after the work was accepted by the execution of the certificate of completion by the project engineer. The city contended that the agreement incorporated a reference to the Municipal Improvement Act of 1913, and that by the terms of that act the payment could not be made until the lien period expired after the recording of the certificate. (Cf. § 10503; and see *Peter Kiewit Sons' Co. v. Pasadena City Jr. College Dist.* (1963) 59 Cal.2d 241, 245-246 [28 Cal.Rptr. 714, 379 P.2d 18].) The trial court rejected that argument and fixed the due date as 35 days after the certificate was signed.[3] The judgment imposed unqualified liability on the city, and there was no attempt to correct it in connection with the proceedings in which the city sought a new trial.

"If, at the time of entering into the obligation, there is a limitation upon the extent to which a municipality may enter into such obligation,

---

[2]The agreement is found as an exhibit to the amended complaint of the subcontractor in action No. 179611 (see fn. 1 above). The general contractor admitted the existence and terms of the agreement by his failure to deny the allegations of the amended complaint which set it forth. At the trial the general contractor introduced in evidence a copy of the entire contract including the agreement.

[3]Parenthetically it may be noted that in its answer to the general contractor's cross-complaint, the city stated, ". . . admits that a Notice of Completion was recorded July 21, 1965. . . ." Similar allegations are found in the city's cross-complaint. In fact it was not recorded until September 17, 1965.

or upon the extent of taxation for the payment of its liability, or *upon the mode in which such payment is to be made,* there is no violation of any provision of the constitution, or of any obligation of the municipality, in insisting that the person dealing with it shall be bound by the terms of the law, as they existed when he entered into his dealings with the municipality." *(Smith* v. *Broderick* (1895) 107 Cal. 644, 653-654 [40 P. 1033], italics added. See also *Inyokern etc. Dist.* v. *Haddock-Engineers, Ltd.* (1950) 36 Cal.2d 450, 453-454 [224 P.2d 709]; *Santa Cruz Rock Pavement Co.* v. *Broderick* (1896) 113 Cal. 628, 629 [45 P. 863]; *Weaver* v. *San Francisco* (1896) 111 Cal. 319, 325 [43 P. 972]; *Conlin* v. *Board of Supervisors* (1893) 99 Cal. 17, 24 [33 P. 753]; *McBean* v. *San Bernardino* (1892) 96 Cal. 183, 187 [31 P. 49]; and *Gamewell Fire Alarm Tel. Co.* v. *Los Angeles* (1919) 45 Cal.App. 149, 158 [187 P. 163].)

"So far as this state is concerned, it must be taken to be settled that a provision in the contract that the city shall not be liable will prevent any recovery against such city if the assessments, for any reason, fail to discharge the cost of the work. [Citations.]" *(Union Trust Co.* v. *State of California* (1908) 154 Cal. 716, 726 [99 P. 183]. See also *Inyokern etc. Dist.* v. *Haddock-Engineers, supra,* 36 Cal.2d 450, 453-454; *Conlin* v. *Board of Supervisors, supra,* 99 Cal. 17, 23; and *McBean* v. *San Bernardino, supra,* 96 Cal. 183, 188.)

 There are several reasons why the city cannot rely upon the last-quoted principle. Although, under principles hereinafter discussed, the city may have been entitled to raise this issue at the trial it did not do so. The contract called for a total price of $275,748.20. Under the proposal the contractor agreed to do the work "for the unit prices and/or lump sums" set forth in the schedule on which he made his proposal. The city acknowledged that the gross amount due under the contract was $288,318.79. The court apparently found in accordance with the testimony of the contractor that the total amount due was $288,418. It appears from the contractor's final billing that the increase was occasioned by an increase in quantities called for under the contract,[4] and that the sum claimed for extra work (see fn 4 above) was not at issue in these proceedings.

---

[4]The standard general provisions incorporated into the contract provided: "*Extra Work*: New and unforeseen work will be classed as extra work when such work cannot be covered by any of the various items or combinations of items for which there is a bid price. The Contractor shall do no extra work except upon written order from the Engineer. For any such extra work, the Contractor shall receive payment as previously agreed upon in writing. . . . *Quantities*: Quantities shown on proposal and contract are approximate only, and are given as a basis for comparison of bids, and the City does not expressly or by implication agree that the actual amount of work done will correspond therewith, but reserves the right to increase or decrease the amount of any class or portion of the work, or to omit portions of the work that may be deemed necessary or expedient by the Engineer."

The resolution of intention under which the proceedings were conducted pursuant to the Municipal Improvement Act of 1913 (Sts. & Hy. Code, §§ 10000-10609) contemplated, "A proposed assessment of the total amount of the costs and expenses of the proposed acquisitions and improvements. . . ." It also provided that serial bonds would be issued under the Improvement Act of 1911 (Sts. & Hy. Code, § 10600 and §§ 5000-6794, particularly §§ 6400-6632) to represent unpaid assessments. The record is silent as to what sum was assessed in these proceedings (see § 10312), or what sums were realized from paid assessments (§§ 10402.5, 10403 and 10424), or what sums were realized from bonds issued and sold for unpaid assessments (§§ 10403, 10602 and 10424). It should be noted that section 10425 of the Municipal Improvement Act of 1913 provides, "If the first assessment or the sale of bonds to represent assessments levied pursuant to this division fails to raise sufficient money to pay all costs, damages, and expenses of the improvement or acquisition, including any judgments rendered in the action and proceedings mentioned in this division and the costs and expenses thereof, the legislative body may pay the deficit out of the general fund, or may order a supplemental assessment to pay the deficit." (See also § 10426.)

The contractor properly asserts that on this record, after failing to raise the issue at the trial, the city cannot contend for the first time on appeal that the contractor must allege and prove that there are sums in the special fund designated for the improvement proceedings (see § 10424) before he can recover. In the absence of anything in the record to the contrary this court will not assume at this stage of the proceedings that there are no funds available, either in the improvement fund or by levy of a supplemental assessment, to pay the judgment. (See *Green* v. *Green* (1963) 215 Cal.App.2d 31, 36 [30 Cal.Rptr. 30]; *Knapp* v. *City of Newport Beach* (1960) 186 Cal.App.2d 669, 679 [9 Cal.Rptr. 90]; and 3 Witkin, Cal. Procedure (1954) Appeal, § 73, pp. 229-230 and 1967 Supp., pp. 929-930.) Moreover, regardless of the facts, the city is barred from consideration of the issue by failure to raise it at the trial, or by motion for new trial. (See Witkin, *op.cit.*, Appeal and Error, § 140, p. 604, and 1967 Supp., p. 946).

The city pleads that the contractor's failure to allege and prove the existence of specific funds is a defect of substance which can be raised at any time. (See 2 Witkin, *op.cit.*, Pleading, § 487, p. 1474, and 3 Cal.Jur.2d, Appeal and Error, § 141, pp. 605-606.) This plea fails because the statute (§ 10425) authorizes payment of any deficit out of the general fund of the city at its option. In *D. A. Parrish & Sons* v. *County Sanitation Dist.* (1959) 174 Cal.App.2d 406 [344 P.2d 883], the court stated: "While section 10424 of the code indicates that loans may be made from the general fund to the special fund, section 10425 does not require that the

general fund must first lend the money to the special fund for the payment of damages. Rather it gives the legislative body an option of paying damages out of the general or special supplemental assessments. This option should not be construed to afford a defendant the choice of deciding whether it will pay the judgment rendered against it."[5] (174 Cal.App.2d at p. 417.) The provisions of the Municipal Improvement Act of 1913 not only contemplate that a city may make a contribution by originally so providing in the resolution of intention (§ 10201), but also, by reference, in such manner as may be provided by the provisions of the Improvement Act of 1911 (§ 10205. See §§ 5125-5128, 5520, 5551 and 5530; and *Klassen* v. *City of San Carlos* (1957) 149 Cal.App.2d 225, 226-227 [308 P.2d 413]).[6]

■ Moreover, it is established that the provisions of an improvement act which restrict the liability of the public entity conducting the proceedings, or of a contract embodying a similar clause, do not apply to damages which may become payable because of a breach of contract by the public entity acting in that capacity. (See § 5285; *Lee C. Hess Co.* v. *City of Susanville* (1959) 176 Cal.App.2d 594, 598-599 [1 Cal.Rptr. 586]; and *Byson* v. *City of Los Angeles* (1957) 149 Cal.App.2d 469, 473-474 [308 P.2d 765].) In the latter case the court related, "The exemption from liability is not a bar to the maintenance of the present action. The statute does not purport to relieve the city from liability for breach of contract; it simply states that the city may not be held accountable for the payment of the original contract price. (See *McBean* v. *San Bernardino,* 96 Cal. 183, 186 . . .; *Conlin* v. *Board of Supervisors,* 99 Cal. 17, 23 . . .)" (149 Cal.App.2d at p. 473.)

■ The city relies on the provisions of section 18 of article XI of the State Constitution which prohibits the city from incurring any indebtedness exceeding the annual income of the city for that year, unless it is incurred by a voter-approved bonded indebtedness. (See Cal. Const., art. XI, § 18; and cf. *City of Redondo Beach* v. *Taxpayers, Property Owners,*

---

[5]In 1967 (Stats. 1967, ch. 1152, § 2, p. 2834) section 10424 was amended by the deletion of the provisions for making loans from the general fund to the special fund. At the same time similar provisions were reenacted as section 10209 (Stats. 1967, ch. 1152, § 1, p. 2834), and in 1968 they were renumbered as section 10210 (Stats. 168, ch. 92, § 3, p. 302).

[6]Former section 5375 of the Streets and Highways Code (Stats. First Ex. Sess. 1950, ch. 65, § 7, p. 526, effective May 3, 1950), which was applied in *Klassen* v. *City of San Carlos* (1957) 149 Cal.App.2d 225 [308 P.2d 413], was repealed in 1963. (Stats. 1963, ch. 416, § 26, p. 1228; and see Final Report of the Assembly Interim Committee on Municipal and County Government on the Uses of Special Assessment Procedures and Independent Special Districts to Aid Land Development, December 18, 1962 [6 Assembly Interim Com. Report No. 20 (1961-1963) p. 39.) It is unnecessary in this proceeding to determine the effect of the 1963 revision of the Improvement Act of 1911.

*etc. of Redondo Beach* (1960) 54 Cal.2d 126, 131-132 [5 Cal.Rptr. 10, 352 P.2d 170]; *City of Oxnard* v. *Dale* (1955) 45 Cal.2d 729, 737 [290 P.2d 859]; *San Francisco Sulphur Co.* v. *Contra Costa County* (1929) 207 Cal. 1, 3-5 [276 P. 570]; *City of Redwood City* v. *Moore* (1965) 231 Cal.App.2d 563, 583 [42 Cal.Rptr. 72]; and *City of Glendale* v. *Chapman* (1951) 108 Cal.App.2d 74, 79-81 [238 P.2d 162].) The foregoing authorities recognize that a liability created by assessment proceedings or a liability to be paid out of some other special fund does not fall within the constitutional prohibition. It does not follow, however, that the judgment in this case must be limited to such a fund. As has been demonstrated the city may become obligated to pay damages for its breach of contract, and it cannot complain of the direct liability imposed where under law it has the option of shouldering that liability itself, or securing reimbursement by a supplemental assessment.

It is concluded that the city cannot complain that the contractor was awarded damages against it. Such award, however, is without prejudice to such rights, if any, as the city may have to order a supplemental assessment. (See §§ 10425 and 10426.) No opinion can be expressed on this point because the property owners are not parties to this action.

*Liquidated Damages for Delay*

■ From the pleadings and evidence it appears that the contract was executed July 17, 1964, and was to be completed in 90 working days.[7] According to the general contractor the work was not completed until May 27, 1965. There admittedly were defects at that date which were subsequently repaired during the one-year guaranty period.

The subcontractor's complaint was filed December 8, 1965. Sometime before August 12, 1966, the general contractor filed the cross-complaint in which he sought relief from the city (see fn. 1 above). On that date the city filed its answer to that cross-complaint, and a cross-complaint against

---

[7]The contract document states: "Time of Completion: The work to be done under this contract shall be completed within ninety (90) working days after the date of execution of this contract. Reference is hereby made to 'Liquidated Damages' clause of Standard General Provisions, Page I-9."

The Standard General Provisions provide: "Liquidated Damages: It is agreed by the parties to the contract that in case all the work called for under the contract is not completed before or upon expiration of the time limit as set forth in these specifications, damage will be sustained by the City and that it is, and will be, impracticable to determine the actual damage which the City will sustain in the event of and by reason of such delays; and it is herefore [*sic*] agreed that the Contractor will pay to the City the sum of Fifty dollars ($50) per day for each day, or portion thereof, of delay beyond the time prescribed to complete the work; and the Contractor agrees to pay such liquidated damages as herein provided, and in case the same are not paid, agrees that the City may deduct the amount thereof from any money due or to become due the Contractor under the contract."

the general contractor and his bonding company.[8] In its answer to the cross-complaint the city denied that it owed any sum of money to the general contractor or anyone else seeking affirmative relief in the action. The cross-complaint incorporates the specifications and contract documents of the general contract, and expressly refers to the following requirements: (1) that "All of said improvements were to be completed within ninety (90) working days of July 17, 1964"; (2) that "the general contractor . . . and his surety, shall remain responsible for a period of one (1) year after acceptance by CITY for any defects appearing in material or workmanship, after mutual acceptance by the CITY of the work and filing of the Notice of Completion on July 21, 1965"; and (3) that "the contractor . . . would hold the CITY free and harmless from any and all claims by subcontractors or materialmen made against the CITY." There is no further mention of the issue of delay in completion except as it might be inferred from the four specific particulars for which $15,000 in damages was sought for the alleged failure of the contractor to perform. One alleged breach was the failure to discharge a lien in the sum of $8,333.79, and the other three represented alleged defects in performance.

Thereafter on November 9, 1966, the general contractor filed his cross-complaint against the subcontractor.[9] He alleged, "Cross-Complainant SPENCER is informed and believes that cross-defendant MORGAN HILL intends to assert liquidated damages of $4,900.00 for delay in completion of the construction contract as a counter-claim; that cross-defendant MORGAN HILL has also filed herein a cross-complaint for breach of contract against cross-defendant SPENCER alleging damages in the sum of $15,000.00." He sought indemnity from the subcontractor "for any amounts that may be adjudged due to cross-complainant MORGAN HILL resulting from the breach or the failure diligently to perform by BILARDI CONSTRUCTION, INC., of its sub-contract with SAMUEL R. SPENCER; . . ." The subcontractor thereupon answered the foregoing cross-complaint and filed a cross-complaint against the city in which it alleged that the city was responsible for any delays which might have occurred, and sought indemnity against the city in the event it was adjudged liable to the general contractor.

On these pleadings a pretrial conference was held on March 8, 1967. The pretrial conference order filed April 6th, in outlining the subcontractor's contentions, recites: ". . . then the City of Morgan Hill answered the Spencer cross-complaint and itself cross-complained against Spencer,

---

[8]The city's cross-complaint against the bonding company was dismissed prior to trial.

[9]The record does not contain a copy of the general contractor's answer to the city's cross-complaint (see fn. 1 above).

contending that the Ctiy is entitled to liquidated damages for the delay in completion of the job.

"That in turn Spencer cross-complained against Bilardi for indemnification in the event the City of Morgan Hill should obtain a judgment against Spencer for liquidated damages, contending that the delay, if any, was caused by Bilardi.

"That then Bilardi answered the Spencer cross-complaint, denying liability, and filed a cross-complaint for indemnity against the City of Morgan Hill, alleging that it was really the City of Morgan Hill which caused the delay, if any.

"That thereafter the City of Morgan Hill answered the Bilardi cross-complaint and the case is now at issue." With reference to the general contractor it notes, "the defendant Spencer has a further cross-complaint for indemnification against Bilardi based on information and belief that there is a counterclaim being asserted by the City of Morgan Hill in the amount of $4,900.00 for the delay and contending that the delay, if any, was caused by Bilardi." In reviewing the city's contentions the order states, ". . . the City admits . . . that it withholds $4,900.00 on the contract for liquidated damages because of the delay in performance of the contract, the City having filed a counterclaim against Spencer in an unstated amount on this basis . . . . The City denies it was in any way responsible for the delay." The order concludes, "The issues in this case then are: (1) whether the delay was within the contract time, i.e. considering rainy periods, etc.; (2) if there was a delay, who was responsible therefor as between the City, Bilardi and Spencer; and (3) if a delay is found, the amount thereof."

When the case was finally called for trial the matter was reviewed in chambers with the trial judge during the morning, and at the afternoon session he announced certain conclusions for the record. With respect to the city's claim for set-off or counterclaim against Spencer, the judge observed, ". . . after examining the pleadings very carefully and discussing this matter with counsel in the greatest detail, the Answer and the Cross-Complaint filed by the City of Morgan Hill does not contain, nor do any of the pleadings in this case, contain any statement whatsoever that the City of Morgan Hill is looking to the cross-complainant Spencer for liquidated damages. The cross-complaint is completely silent on that, and the only mention that is made is the Pre-Trial Order on Page 2, starting at Line 22, in which the Pre-Trail Order erroneously states that, among other things, 'The City of Morgan Hill answered the Spencer cross-complaint and itself cross-complained against Spencer, contending that the City is entitled to liquidated damages for the delay in completion of the job.' Of course, that is in error. The cross-complaint, and it is before me here,

contains no such statement. The pleadings, as I said, are not in order at all, and you gentlemen are entirely familiar with this, but I would like to get it in the record." The judge correctly noted that the city's cross-complaint contained no express claim or prayer for liquidated damages. His remaining observations must be weighed against the pleadings and pretrial conference order which have been reviewed above.

At the trial the parties then agreed in open court to the times and amounts of certain payments that admittedly had been made. It was acknowledged that $7,837.53 was due from the general contractor to the subcontractor; and the city acknowledged that the amount it was withholding from the general contractor was $4,800.57. The city then moved to amend its answer to assert a counterclaim in that amount for liquidated damages. The court adhered to the view that the city could not proceed to claim liquidated damages under the pleadings as they were filed,[10] and, after hearing argument, denied the city's motion to amend its cross-complaint.

The general contractor proceeded to put on a case to meet the general denial contained in the city's answer to its cross-complaint. The contractor established the contract, his statement of the amount due under the contract, the payments received, and the balance due of $4,800.57. When the city attempted to cross-examine the contractor concerning compliance with the 90-working-day clause, the court sustained the objection interposed on behalf of the contractor. Through the testimony of the city administrator, the contractor established verification of the figures, and he introduced in evidence letters from the city to the contractor dated September 13, 1965, and December 17, 1965. In the former letter there was no mention of withholding any amount for delay.[11] In the second letter the city claimed liquidated damages in the sum of $4,900.[12]

---

[10]In the course of argument the attorney for the subcontractor disclosed that the defects specifically set forth in the city's cross-complaint for $15,000 had been corrected, and for that reason the cross-complaint had been dismissed against the bonding company. It was also brought out by the city and confirmed by the general contractor that the issue of damages for delay in completion arose at an abortive pretrial hearing in October 1966, after which the general and subcontractors filed their respective cross-complaints for indemnity.

[11]The letter reads in part: "The enclosed check in the amount of $20,000 is an advance partial payment of the final billing for the Rancho Encino construction project. As discussed verbally with your attorney, we will record the certificate of completion within the next few days. The balance of the final payment will be made after the 35 day lien period which starts with the recording of the certificate."

[12]This letter reads in part, "In a separate action, the Council determined that liquidated damages should be assessed on the grounds that your failure to pursue work diligently caused material damages to the City of Morgan Hill, in amounts which cannot be determined precisely. The penalty period was determined to be from

At the close, the city made the following offer of proof: ". . . that the City is prepared, and has witnesses here to prove what it attempted to do previously to assert a counterclaim and proof being that there was a delay due to the contractor's fault in performance of this contract, and that the delay caused damages to the City, substantial damages to the City, and to developers, both which are difficult to ascertain, which were difficult to ascertain at the time of the entering into the contract, at least, and we are prepared to put on evidence both by the owner developers and by City officials of the various elements of damages caused by this delay."

In rejecting the evidence and adhering to its former ruling the court noted for the second time that the city in any event had waived or would be estopped to show damages for delay in completion even if it filed a proper pleading.[13]

The findings recite: "No findings are required on BILARDI's answer to SPENCER's cross-complaint for indemnity, nor on BILARDI's cross-complaints against SPENCER and MORGAN HILL for indemnity in the event of a judgment in favor of MORGAN HILL." The court concluded, "Cross-complainant THE CITY OF MORGAN HILL shall take nothing by its cross-complaint." Judgment followed accordingly. A motion for new trial was interposed by the city. The declaration of its attorney in support of the motion alleges surprise, in that he relied upon the issues as stated in the pretrial order. The city's motion was denied and this appeal ensued.

Admittedly the city's cross-complaint does not set forth sufficient facts to sustain a cause of action for liquidated damages, nor any prayer for the recovery of such damages. In support of the rulings of the trial court the general contractor relies upon the following principle: "it is clearly incumbent upon the party seeking to recover upon such agreement [for

February 18, 1965, through May 26, 1965, a period of 98 consecutive calendar days. The latter date is the last day before the sewer and water systems were approved for limited use by homeowners."

[13]At one point the court stated, ". . . I am not going to receive any evidence along that line because, as I say, because of my ruling that should foreclose you, but there would be another reason too. In looking this over it is so crystal clear that even if you were permitted to show this, there has been a waiver and you wouldn't prevail in any event. It wouldn't make a particle of difference. At the outside the job was completed. The money was due, due on the thirty-fifth day after completion or some time in August and the material I have had before me in the file here indicates that months passed before anything was ever developed along this line and you'd be estopped. There has been a waiver. Even if the Court had granted the amendment, frankly, in my opinion it would have been a wasted time. You would have gotten no place anyway. I'd appreciate it if you will just stay away from that subject because it is not germane now in view of the Court's ruling, and the other part I added is because that happens to be my feeling after looking over the file that it was waived anyway." These remarks were apparently predicated on the fact that retention was never mentioned prior to the letter of December 17, 1965, and upon the city's failure to amend its pleadings after the October 1966 pretrial conference.

liquidated damages] to show by averment and proof that his case is within the exception [provided in Civ. Code, § 1671[14]], for without an allegation bringing his case within the exception the complaint in that regard is insufficient, the presumption being, in the absence of such allegation, that such agreement is void." (*Long Beach etc. Dist.* v. *Dodge* (1902) 135 Cal. 401, 405 [67 P. 499]. See also *Smith* v. *Royal Mfg. Co.* (1960) 185 Cal.App.2d 315, 325 [8 Cal.Rptr. 417]; *Fox Chicago Realty Corp.* v. *Zukor's Dresses, Inc.* (1942) 50 Cal.App.2d 129, 133 [122 P.2d 705]; *Kelly* v. *McDonald* (1929) 98 Cal.App. 121, 123-124 [276 P. 404] [disapproved in part *McCarthy* v. *Tally* (1956) 46 Cal.2d 577, 587 (297 P.2d 981)]; and *Hanlon Drydock etc. Co.* v. *G. W. McNear, Inc.* (1924) 70 Cal.App. 204, 215 [232 P. 1002].)

The contractor and the trial court have disregarded the effect of the pretrial conference order. California Rules of Court, rule 216, provides: "When filed, the pretrial conference order becomes a part of the record in the case and, where inconsistent with the pleadings, controls the subsequent course of the case unless modified at or before trial to prevent manifest injustice. Any motion so to modify before trial shall be heard by the pretrial conference judge, or, if not available, before the presiding judge or, if none, before any judge sitting in that court."

In *Ury* v. *Jewelers Acceptance Corp.* (1964) 227 Cal.App.2d 11 [38 Cal.Rptr. 376], the court ruled as follows: "Appellant contends that attorneys' fees should not have been awarded because, although the pretrial order allowed respondent to amend the counterclaim to include pleading fees, actual amendment was not made. The pretrial order, however, also directly states that attorneys' fees are an issue. The order is controlling. (Cal. Rules of Court, rule 216.)" (227 Cal.App.2d at p. 23. See also *Hurd* v. *Paquin* (1964) 229 Cal.App.2d 634, 636 [40 Cal.Rptr. 524]; *Aero Bolt & Screw Co.* v *Iaia* (1960) 180 Cal.App.2d 728, 743 [5 Cal.Rptr. 53]; and *Wiese* v. *Rainville* (1959) 173 Cal.App.2d 496, 508-509 [343 P.2d 643].) ■ The failure to request a correction or modification of the pretrial order (see Cal. Rules of Court, rule 215(b)), or to move to modify or to amend it (see *id.* rule 216; and Code Civ. Proc., § 576), is a waiver of the right to present any issues other than those set forth in the order. (*Smith* v. *Carey* (1965) 238 Cal.App.2d 438, 440-441 [48 Cal.Rptr. 12];

---

[14]Civil Code section 1670 provides: "Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section."

Civil Code section 1671 provides: "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

*Feykert* v. *Hardy* (1963) 213 Cal.App.2d 67, 74 [28 Cal.Rptr. 510]; *Spence* v. *State of California* (1961) 198 Cal.App.2d 332, 336-339 [18 Cal.Rptr. 302]; *Gordon* v. *Reynolds* (1960) 187 Cal.App.2d 472, 475 [10 Cal.Rptr. 13]; *Perry* v. *Thrifty Drug Co.* (1960) 186 Cal.App.2d 410, 412 [9 Cal.Rptr. 50]; *Dell'Orto* v. *Dell'Orto* (1959) 166 Cal.App.2d 825, 831 [334 P.2d 97]; and *Baird* v. *Hodson* (1958) 161 Cal.App.2d 687, 688-691 [327 P.2d 215].)

██ More particularly a party may not raise inadequacies in a pleading after the issues have been determined by a pretrial order. In *Fitzsimmons* v. *Jones* (1960) 179 Cal.App.2d 5 [3 Cal.Rptr. 373], the court reversed an order denying the defendant relief under the provisions of section 473 of the Code of Civil Procedure because the trial court had erroneously granted the plaintiff's motion for judgment on the pleadings because of the insufficiency of the allegation of the answer and "counter-complaint." The court ruled, "Respondent's defense of the judgment upon the ground that a motion for judgment on the pleadings may be 'made at the time the case is called for trial' does not meet the issue here. The question probes not whether the trial court may entertain the motion but whether the court may supersede the pretrial order, which defines the issues, and, nevertheless, hold that the pleadings fail to tender an issue. We conclude, for the reasons above stated, that the pretrial order must control; that it precludes the rendered judgment on the pleadings, premised, as it is, on a resurrected, defective answer." (179 Cal.App.2d at p. 10. See also *Johnson* v. *Servaes* (1962) 210 Cal.App.2d 392, 400 [26 Cal.Rptr. 733]; and *Mott* v. *Tomlinson* (1961) 194 Cal.App.2d 886, 893-895 [15 Cal.Rptr. 541].)

██ The contractor's contention that these principles only apply to restrict issues, or to excuse pleading a condition precedent, and do not apply to permit the creation of a new theory of action or defense is not meritorious. In *Hurd* v. *Paquin, supra,* the plaintiff put himself out of court because at the pretrial conference it was determined that his action for false imprisonment and battery was not merely against two individuals as alleged, but actually against two municipal employees against whom no claim had been filed (229 Cal.App.2d at p. 636). In *Ury* v. *Jewelers Acceptance Corp., supra,* there was no pleading or prayer for attorney's fees and the issue was first raised through the pretrial order (227 Cal.App.2d at p. 23).

It is obvious that all parties were aware that the question of the city's right to withhold a portion of the contract amount for liquidated damages was to be an issue at the trial. So in any event, on the record set forth above, it was an abuse of discretion to deny the amendment. (See Code Civ. Proc., § 576; *Beverage* v. *Canton Placer Min. Co.* (1955) 43 Cal.2d 769, 778-779 [278 P.2d 694]; *McDougald* v. *Hulet* (1901) 132 Cal. 154, 161-

162 [64 P. 278]; *Gould* v. *Stafford* (1894) 101 Cal. 32, 34 [35 P. 429]; and *Hyman* v. *Tarplee* (1944) 64 Cal.App.2d 805, 813-814 [149 P.2d 453]; but cf. *Feykert* v. *Hardy, supra,* 213 Cal.App.2d 67, 74-76.)

█ It must be acknowledged that liquidated damages may be recoverable where from the nature of the case it would be impracticable or extremely difficult to fix the actual damage. (Civ. Code, § 1671; and see *London Guar. & Acc. Co.* v. *Las Lomitas School Dist.* (1961) 191 Cal.App.2d 423, 427 [12 Cal.Rptr. 598]; *Smith* v. *Royal Mfg. Co., supra,* 185 Cal.App.2d 315, 324; *Farthing* v. *San Mateo Clinic* (1956) 143 Cal.App.2d 385, 392 [299 P.2d 977]; *Fox Chicago Realty Corp.* v. *Zukor's Dresses, Inc., supra,* 50 Cal.App.2d 129, 133; *Kelly* v. *McDonald, supra,* 98 Cal.App. 123, 124-125; and *Hanlon Drydock etc. Co.* v. *G. W. McNear, Inc., supra,* 70 Cal.App. 204, 208-211.) Such agreements are recognized with respect to the delays caused by construction contracts. (See *London Guar. & Acc. Co.* v. *Las Lomitas School Dist., supra,* 191 Cal.App.2d 423, 427; and *Hanlon Drydock etc. Co.* v. *G. W. McNear, Inc., supra,* 70 Cal.App. 204, 208-211.) The questions of whether there was a delay, who was responsible therefor, and the amount of the delay were the issues framed by the pretrial order. When those factual issues were resolved the liability for the delay could be determined as a matter of law. (See *Peter Kiewit Sons' Co.* v. *Pasadena City Jr. College Dist., supra,* 59 Cal.2d 241, 245; *Aetna Cas. etc. Co.* v. *Board of Trustees, supra,* 223 Cal.App.2d 337, 340-341; *London Guar. & Acc. Co.* v. *Las Lomitas School Dist., supra,* 191 Cal.App.2d 423, 425 and 427; and *Gogo* v. *Los Angeles Flood Control Dist.* (1941) 45 Cal.App.2d 334, 344-345 [114 P.2d 65].)

█ There is a suggestion that the city waived any right to liquidated damages for delay by its failure to demand any damages at the time of the acceptance of the work. (See fn. 13 above.) The record does not reveal such a waiver as a matter of law. There was no attempt at final settlement of the amount due under the contract prior to December 17, 1965, when the city asserted its claim for $4,900. The question of waiver is generally a question of fact. Furthermore, the issue of waiver was not raised in either the pretrial order or the earlier pleadings.

It is concluded that the trial court erred in refusing to hear evidence on the issues raised by the pretrial order, and in failing to resolve and make findings on those issues. Since those issues also involve the rights and obligations between the general contractor and the subcontractor, the entire judgment must be reversed.

The judgment is reversed in its entirety, with costs to the city against

the general contractor on its appeal, and without costs to either party on the appeal of the general contractor from the judgment in favor of the subcontractor.

Molinari, P. J., and Elkington, J., concurred.