[Civ. No. 12614. Third Dist. Aug. 12, 1971.]

NOMELLINI CONSTRUCTION CO., Plaintiff and Respondent, v. THE STATE OF CALIFORNIA ex rel. DEPARTMENT OF WATER RESOURCES, Defendant and Appellant.

## Counsel

Thomas C. Lynch and Evelle J. Younger, Attorneys General, and Iver E. Skjeie, Deputy Attorney General, for Defendant and Appellant.

Dante John Nomellini for Plaintiff and Respondent.

## Opinion

**PIERCE, P. J.**—Nomellini Construction Co. (Nomellini) had a contract with the State of California, acting through the Department of Water Resources (Department), to construct 50 portable houses to be placed on concrete foundations. By the terms of the contract the houses could either be constructed off-site or on-site. If built off-site they were to be transported to the site, placed upon the foundations (also to be built by Nomellini) and assembled and completed ready for occupancy. The contract included full plans, specifications and other contract documents. In compliance with Government Code section 14376 the contract provided a time period for completion and for liquidated damages for unexcused late completion, viz., work was to begin within 30 days after notice and completed within 105 days. Nomellini agreed to pay the Department as liquidated damages $10 per house per day for each calendar day's delay. Notice to proceed was given July 9, 1963. The completion date, therefore, was scheduled for October 22, 1963. The houses were not completed according to schedule. They were completed as to various houses between January 15 and March 27, 1964, a total "overrun" of 6,840 house days.

The contract contained extension provisions hereinafter to be noted. A claim was duly filed for the amounts withheld. Suit was brought by Nomellini and a judgment recovered for $44,000 plus interest, the full amount sued for. The Department has appealed.

Several issues have been presented on appeal. Only two need be discussed: (1) Was Nomellini or the Department or both responsible for delays attendant to the approval of certain shop drawings? (2) If some of the delay was the responsibility of each party, was the Department properly deprived of *all* liquidated damages?

The factual basis of Nomellini's claim was extensions claimed to have been earned but not allowed.[1] Certain extensions had been granted by the

---

[1] The contract contained a provision for extensions. It provides: "When a delay occurs due to unforseen causes beyond the control and without the fault or negligence of the Contractor . . . the time of completion shall be extended for a period justified

Department. The division engineer found that a plywood strike had delayed construction by 2,440 house days and therefore reduced the total days for which liquidated damages were exacted to 4,400 house days. Nomellini had also sought an extension claiming it had had to design or redesign the houses to make them portable, that it had done so by means of shop drawings and that the Department had delayed Nomellini by failing to approve such drawings in time to allow it to perform within the contract period. The division engineer denied that claim, his decision was appealed to a chief engineer, a board of review for construction contract claims of the Department held an informal hearing and the claims were denied by the chief engineer "because the delays experienced by [Nomellini] were not attributable to acts or omissions of the Department. . . ."

Other facts will be discussed in connection with the issues.

### RESPONSIBILITY FOR SHOP DRAWINGS

The law required and the evidence showed that the houses in the plans and specifications upon which Nomellini had bid and as contained in the contract between the parties were designed as portable. (Gov. Code, §§ 14270, 14272.) These documents were complete. Nomellini could have constructed the houses according to them and would have been entitled to its contract price—had the plans and specifications been complied with —even though the houses in fact turned out not to be portable. (*Patrick J. Ruane, Inc.* v. *Parker* (1960) 185 Cal.App.2d 488, 498 [8 Cal.Rptr. 379]; see also *Mannix* v. *Tryon* (1907) 152 Cal. 31, 40-41 [91 P. 983].)

Under section 14, subdivision (a) (1), of the contract between the parties it was stated that the drawings showed the general methods of assembling and joining, disassembling and separation of the units. Shop drawings detailing the methods of accomplishing this were to be prepared by the contractor. These methods were enumerated precisely in the documents furnished Nomellini. Only in the case of alterations desired by Nomellini was there any necessity of special approval by the Department of plans therefor.

The contract contained a provision for substitute methods. At its option

---

by the effect of such delay on the completion of the work." Procedural steps to obtain extensions were "the Contractor shall file written notice with the Engineer" who shall ascertain the facts and extent of the delay, if any. "[I]f he finds that a time extension is justified [he shall] issue an appropriate change order. . . . If the Engineer determines that a time extension is not justified, he shall so advise in writing. Should the contractor disagree . . . , he may submit a notice of potential claim to the Engineer. . . ." There was a provision for a decision "and his decision shall be final and conclusive unless it is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith."

Nomellini might present detail drawings for alternate methods. It did so. It desired to substitute "stress skin" for "open beam assembly." The Department permitted the changes. It was known to Nomellini when it took the contract providing for completion of all work by October 22, 1963, that any substitute methods would be permissive and required approval. There was no provision in the contract for extensions of time under those circumstances.

The trial court made a finding that final approval of plaintiff's submitted drawings did not occur until November 1, 1963, and that this was occasioned by the Department's act. The contract, therefore, it was found, could not have been completed on the schedule date, October 22, 1963. That sounds as though the Department had caused a delay (and the trial court so concluded), but we find nothing in the record to support that conclusion. The greater portion of Nomellini's shop drawings had been submitted previously and had been approved long before October 22. The only shop drawings which were not approved prior to the completion date were the permissive detail drawings which Nomellini elected to submit and thereafter resubmit for an alternate method of taking care of the portability feature because that substitute method would save the contractor money. As to these, all were acted upon by the Department within the time limit as expressed in the contract or earlier. Thus Nomellini and not the Department was responsible for these delays.

We have mentioned above that the Department allowed an extension of time for the delay caused by a certain plywood workers' strike. It is stated that there were other delays. Other contractors did not complete certain streets on time. But the record establishes that those delays in no way contributed to Nomellini's "overrun."

### APPORTIONMENT OF FAULT IN THE AWARD OF LIQUIDATED DAMAGES

Government Code section 14376[2] requires that in every contract for public work there shall be a provision specifying a date for the completion of the work and further specifying liquidated damages to be deducted from the payments due in the event of late completion. This contract contained the required provision. As stated above, it also contained

---

[2]The portion of Government Code section 14376 here pertinent provides: "Every contract shall contain a provision in regard to the time when the whole or any specified portion of the work contemplated shall be completed, and shall provide that for each day completion is delayed beyond the specified time, the contractor shall forfeit and pay to the State a specified sum of money, to be deducted from any payments due or to become due to the contractor."

a provision for extensions of time for delays which were not the fault of the contractor. (See fn. 2.) We have also shown that the Department disallowed certain claims of Nomellini for extensions. We have been unable to find in the record any instances in which the Department was wrong. Assuming arguendo *contrary to our holding* that there were delays which the Department should have allowed, they were delays which the trial court would have been obligated to apportion.

The controlling law is found in the decision of the United States Supreme Court in *Robinson* v. *United States,* 261 U.S. 486 [67 L.Ed. 760, 43 S.Ct. 420]. That case involved a contract which provided for both liquidated damages and extensions of time. The work was not completed on time. The government acknowledged that 12 of 121 days of delay were chargeable to it; the trial court found the government was chargeable with 60 days delay. The contractor "contended that, since the government had caused some of the delay, the provision for liquidated damages became wholly inapplicable and was unenforceable; . . ." (P. 487 [67 L.Ed. 761].) In holding that apportionment was proper the court stated at page 488 [67 L.Ed. at page 762]: "If the provision for liquidated damages is not to govern, it must be either because, as [a] matter of public policy, courts will not, under the circumstances, give it effect (even as a defense), or because, in spite of the explicit finding, no day's delay can, as [a] matter of law, be chargeable to the contractor, where the government has caused some delay. Neither position is tenable.

"The provision is not against public policy. The law required that some provision for liquidated damages be inserted. . . . In construction contracts a provision giving liquidated damages for each day's delay is an appropriate means of inducing due performance, or of giving compensation, in case of failure to perform; and courts give it effect in accordance with its terms. . . . The fact that the government's action caused some of the delay presents no legal ground for denying it compensation for loss suffered wholly through the fault of the contractor. Since the contractor agreed to pay at a specified rate for each day's delay not caused by the government, it was clearly the intention that it should pay for some days' delay at that rate, even if it were relieved from paying for other days, because of the government's action." This holding of the Supreme Court did not announce a unique or novel principle. 5 Williston on Contracts (3d ed. 1961) pages 764-766, states: "Where both parties are in fault a party who has contributed to the breach cannot recover a sum stipulated as liquidated damages, even though performance of the contract is continued, and the other party is thereafter at fault: . . . In building contracts, there

is often inserted a provision giving the architect power to certify an extension of time in certain cases, by virtue of which the effect of a delay caused by the owner operates merely as an extension of the time of performance, and a new time is substituted for the old. In that event though the owner causes delay the builder is liable in liquidated damages, but the period of delay caused by the owner is deducted from the total delay. Unless the contract contains such a provision the delay due to each party will not generally be apportioned." (Similar statements are to be found in 15 Am.Jur. 696, and in 152 A.L.R. 1349.)

The trial court in its findings cited *Peter Kiewit Sons' Co.* v. *Pasadena City Junior College Dist.* (1963) 59 Cal.2d 241 [28 Cal.Rptr. 714, 379 P.2d 18], but the part of the case upon which it relied was dicta. The holding was based upon Civil Code section 1511, which provides in effect that delays in performance caused by the "creditor" (i.e., the owner) are excused "even though there may have been a stipulation that this shall not be an excuse." It was held in *Kiewit* that this code section effectually superseded the contractual stipulation that the contractor was not to be excused unless a claim was made in a particular way. Also, the dictum in *Kiewit* relied upon was inapplicable. The statement that provisions for liquidated damages for delay were nullified if and when the owner was liable for some of the delay was limited to contracts in which there was no "contractual provision for extensions of time." (*Id.,* p. 245.)

The earlier case of *Gogo* v. *L.A. etc. Flood Control Dist.* (1941) 45 Cal.App.2d 334 [114 P.2d 65] (hg. den.) and cases which have followed it (see *General Insurance Co.* v. *Commerce Hyatt House* (1970) 5 Cal. App.3d 460, 472 [85 Cal.Rptr. 317]; *Bilardi Constr., Inc.* v. *Spencer* (1970) 6 Cal.App.3d 771, 786 [86 Cal.Rptr. 406]) have either involved contracts devoid of extension provisions or contracts between private parties, and where it was said: " 'Liquidated damages are a penalty not favored in equity . . . .' " (*General Insurance Co.* v. *Commerce Hyatt House, supra,* p. 472.) Here, as we have seen, provisions for liquidated damages in public contracts are not only favored, they are expressly commanded by Government Code section 14376. Moreover, categorical statements that where delays are caused on both sides there is no way to "apportion damages" are an absurdity. Damages are not being apportioned. Damages are liquidated. Quantum of delay in terms of time is all that is being apportioned. That is an uncomplicated fact finding process. That is what courts are for.

On the record as it has been represented to this court by the parties in

their briefs and in their arguments there were no disallowed delays for which Nomellini was not responsible.

Judgment is reversed, and the court is directed to enter judgment for defendant.

Regan J., and Bray, J.,* concurred.

A petition for a rehearing was denied September 8, 1971, and respondent's petition for a hearing by the Supreme Court was denied October 6, 1971.,

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.