**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**February 25, 2009**

**TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA for
the use of BELT CON
CONSTRUCTION, INC.,

     Plaintiff/Counter-Defendant/
     Appellee,

v.

METRIC CONSTRUCTION CO.,
INC.; SAFECO INSURANCE
COMPANY OF AMERICA,

     Defendants/Counter-Claimants/
     Appellants.

No. 07-2091

(D.C. No. CIV-02-1398-JB/LAM)
(D. New Mexico)

## ORDER AND JUDGMENT[*]

Before **BRISCOE, TYMKOVICH,** and **GORSUCH**, Circuit Judges.

Belt Con Construction, Inc. ("Belt Con") brought a Miller Act action

pursuant to 40 U.S.C. §§ 270a–270d against Metric Construction Co. Inc.,

("Metric") arising out of contracts to construct a Federal Law Enforcement

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Training Center Campus ("Training Center") in New Mexico. Metric responded by filing counterclaims. After a bench trial and an order addressing Metric's motion to amend judgment, the United States District Court for the District of New Mexico awarded Belt Con damages and concluded Belt Con was the prevailing party. Metric now appeals the district court's denial of two claims made in its motion to amend judgment: (1) to reduce Belt Con's damage award by the value of the roof warranties Belt Con did not provide; and (2) to apportion to Belt Con damages from delays during construction. Metric contends that the district court correctly determined that Belt Con failed to satisfy its contractual obligation to provide roof warranties, but wrongly decided that there was insufficient evidence to determine the value of the warranties. As regards damages caused by delay, Metric contends that the district court wrongly determined that any delays attributable to Belt Con were concurrent with delays caused by others and that given the evidence presented, concurrent delays could not be apportioned. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

I

Metric contracted with the General Services Administration ("GSA") to build dormitories, and physical training and security buildings. Metric also contracted with the GSA to build two firing ranges. Metric subcontracted with Belt Con for masonry work on the dormitories and physical training building.

2

The construction project was not completed on time.

As a result of the construction delays, GSA withheld liquidated damages from its contract payment to Metric. Metric disputed this decision and filed claims against the United States, contending that GSA caused the delays. Metric and GSA resolved these claims in a settlement agreement. The terms of the settlement agreement include the following language:

> The GSA maintains that it properly withheld and is entitled to liquidated damages on the Dormitory project and the Range project. Metric concedes some liability for the late completion of the projects, but maintains that it is entitled to compensation for some delay and changed or extra work performed by Metric on the projects.

Aplt. App'x Vol. II at 280.

After the settlement between GSA and Metric, Belt Con filed the present action. Belt Con alleged that Metric failed to pay Belt Con all of the money it owed to Belt Con under its subcontract and that Belt Con was entitled to additional compensation for delays and extra work. Among other defenses, Metric responded that Belt Con failed to complete the contracted work on schedule. Additionally, Metric brought a counterclaim against Belt Con for clean-up costs Metric incurred after Belt Con completed its work. Metric also argued that any award to Belt Con should be reduced by the value of the roof warranties Belt Con failed to provide, and by the value of the liquidated damages GSA assessed against Metric that were in fact caused by Belt Con's delay.

3

The district court held a four-day bench trial. The district court found that California law governed the contract between Metric and Belt Con. Applying California law to its factual findings, the district court determined that Belt Con was entitled to the unpaid balance on the contract, plus interest. The district court, however, did not grant Belt Con's requests for delay damages. Regarding Metric's counterclaims, the district court awarded Metric its requested clean-up costs. Despite finding that the contract required Belt Con to provide roof warranties and that Belt Con failed to provide them, the district court concluded that "Metric has not proved by a preponderance of the evidence damages for Belt Con's failure to provide the roof warranties." Aplt. App'x Vol. I at 155. Similarly, the district court denied Metric's request for liquidated damages resulting from Belt Con's delays. As regards attorney fees and costs, the court found that Belt Con was the prevailing party.

In response to the district court's Findings of Fact and Conclusions of Law entered after the bench trial, Metric filed a motion to amend judgment. Metric asked the district court to apportion some of the delay to Belt Con, and offset the contract balance awarded to Belt Con by the value of the roof warranties and the "pipe identification work" that Belt Con did not provide. Aplt. App'x Vol. I at 219. The court reduced the award by the value of the pipe identification work, corrected scriveners errors in its prior findings, and denied the balance of Metric's motion. Metric now appeals, arguing that the district court erred by not

4

reducing Belt Con's award by the value of the roof warranties and by not apportioning any delay to Belt Con.

II

A.     Roof Warranties

Metric contends the district court erred as a matter of law in its rulings regarding the roof warranties. It appears that Metric agrees with the district court's findings of fact on this issue.  Because Metric's challenge involves only the application of legal principles to undisputed facts, our review is de novo.  See Hollern v. Wachovia Sec., Inc., 458 F.3d 1169, 1175 n.4 (10th Cir. 2006) (applying this standard in the context of attorney fees).

After the bench trial, the district court addressed the roof warranties issue in its Findings of Fact and Conclusions of Law.  The court found that GSA requested roof warranties from Metric, who in turn in its contract with Belt Con required Belt Con to provide them.  Belt Con did not provide the roof warranties to Metric.  In its later Memorandum Opinion and Order, the court noted that Belt Con stated "it was not going to provide the warranties until Metric paid Belt Con all the money to which Belt Con felt it was entitled."  Aplt. App'x Vol. I at 231. Metric asked other roofing contractors to provide warranties, but they declined to warrant another contractor's work.  Id. 149–50; 154–55.  The district court later clarified that "Metric was able to obtain only one quotation for a roof warranty [from another roofer] in the amount of $118,000."  Id. at 231.  Although the

5

district court acknowledged that "Metric remains liable to the GSA for any warranty items that may arise relating to the roof," the district court found that "[t]he GSA has not called on Metric to honor the warranty, and Metric has not performed any warranty work." Id. at 154–55; 232. "[T]he GSA called Belt Con directly several times to repair the roof . . . Belt Con responded to each call and performed work on the roof even when Belt Con felt that the warranties did not cover the repairs." Id. at 232. In the Memorandum and Opinion addressing Metric's motion to amend, the district court considered Metric's damages regarding roof warranties to be the difference between Metric's settlement amount with the GSA, and the hypothetical amount that Metric would have requested if the warranties were provided. Id. The district court found that "Metric does not know how much less it took in settlement because of the warranty issue." Id. The district court concluded the testimony regarding the value of the warranties that was based upon another roofer's offer was "speculative and conjecture." Id. at 155; 256. After trial and after considering Metric's motion to amend, the district court concluded that "Metric has not . . . proved that it has been damaged." Id. at 155; 256–57 ("Metric failed to demonstrate that it suffered any damages."). The district court denied Metric's motion to amend judgment based upon Belt Con's failure to provide the roof warranties.

Metric agrees with the district court's factual findings, but contends that the district court misapplied the law regarding contractual damages. First, Metric

6

argues that the district court "misapplied the 'reasonable certainty' rule and confused the distinction between uncertainty as to *amount* with uncertainty of existence." Aplt. Br. at 21. To support this argument, Metric relies on the facts that it contracted with Belt Con for the roof warranties, did not receive them, and remains liable to the GSA for "roof warranty issues." Id. Metric also argues its failure to receive the roof warranties was the present loss of a contractual right, and not "future damages" as characterized by the district court. Second, Metric argues that if the amount of damages—the value of the roof warranties—is difficult to calculate, any disadvantage arising from that difficulty should be borne by Belt Con and not Metric. Similarly, Metric argues that because of the nature of Belt Con's breach, the evidence Metric presented was the best available evidence and provides a sufficient basis for the court to approximate Metric's damages. Metric concludes "[c]ertainly there is no evidence in the record to suggest that the value of the roof warranties was zero[; i]t is illogical to presume the warranty has no value where warranties are present protection against unknowns and uncertain future liabilities." Aplt. Br. at 29.[1]

---

[1] Metric also argues that the district court could have created an equitable remedy forcing Belt Con to deliver the roof warranties. Belt Con responds that this argument was not presented to the district court. In its reply, Metric does not dispute this assertion or reference where in the record this argument was previously made. Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal. Governor of Kan. v. Kempthorne, 516 F.3d 833, 841 (10th Cir. 2008) (citation omitted.)

7

We agree with the district court that California law governs this contract. We look to the conflict of law rules of New Mexico, the forum state, to determine which state's laws control. Mountain Fuel Supply v. Reliance Ins. Co., 933 F.2d 882, 887–88 (10th Cir. 1991). Unless it would result in a violation of "fundamental principles of justice," New Mexico courts apply the law of the state where the parties executed the contract. Demir v. Farmers Tex. County Mut. Ins. Co., 140 P.3d 1111, 1113–14 (N.M. Ct. App. 2006) ("When differences between the law of the forum state and the law of the state where the contract was executed concern only contract interpretation, we will apply the law of the state where the parties entered the contract."). Belt Con and Metric executed the contract at issue in California. Aplt. App'x Vol. I at 151. Neither party disputes that California law applies.

Under California law, every contract action requires the establishment of "a causal connection between the breach and the damages sought." Thompson Pac. Const., Inc. v. City of Sunnyvale, 66 Cal. Rptr. 3d 175, 188 (Cal. Ct. App. 2007). In the context of building construction, the amount of damages is the difference between the contract price and the price of completing the contract work. Fairlane Estates, Inc. v. Carrico Const. Co., 39 Cal. Rptr. 35, 40 (Cal. Ct. App. 1964). Damages that are not causally connected with the breach of a contract are not recoverable. Patent Scaffolding Co. v. William Simpson Const. Co., 64 Cal. Rptr. 187, 191–92 (Cal. Ct. App. 1967). Damages that result from a liability to a

8

third party are not recoverable unless the party seeking the damages "proves to a reasonable certainty that the liability could and would be enforced by the third party" or that the party seeking the damages "could and would satisfy the obligation." Green Wood Indus. Co. v. Forceman Int'l Dev. Group Inc., 67 Cal. Rptr. 3d 624, 632 (Cal. Ct. App. 2007).

> Accordingly, the existence of a mere liability is not necessarily the equivalent of actual damage. This is because the fact of damage is inherently uncertain in such circumstances. The facts that a third party has demanded payment by the plaintiff of a particular liability and plaintiff has admitted such liability are not, by themselves, sufficient to support an award of damages for that liability, because that third party may never attempt to force the plaintiff to satisfy the alleged obligation, and plaintiff may never pay the obligation.

Id. at 633 (stating that such reasoning applies whether the claim sounds in contract or tort).

Metric attempts to base its alleged damages on the district court's finding that Metric remains liable to the GSA for roof warranty issues. Metric argues that its damages should be the present value of the protection from future liability. Aplt. Br. at 23 ("[As] a direct result of Belt[]Con's refusal to furnish the roof warranties, Metric has lost the protection against possible liability that it contracted for."). To support this argument, Metric cites the California Supreme Court's opinion in Caminetti v. Manierre, 142 P.2d 741, 745 (Cal. 1943), for the statement: "The courts are not so impotent that they will permit a total loss of such a right merely because of a claimed uncertainty or difficulty in determining

9

the extent to which the insured may be damaged by the breach of the promise." The California Supreme Court, however, went on to state, "Of course, the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged. And the nature of the damages should be ascertainable." Caminetti, 142 P.2d at 745 (citations omitted).

The requirement of proof of damages with "reasonable certainty and probability that damages will result in the future" is where Metric's claim falls short. Id. Metric has not provided any evidence related to the probability that GSA will hold it liable for the roof warranties. Metric's only evidence related to the value of the roof warranties consists of hearsay testimony that one roofer would provide substitute roof warranties for the amount of $118,000, which Metric's president was unsure he would accept, and that if Metric had the warranties, it may have tried to settle with the GSA for a greater amount. The district court questioned the credibility and reliability of this evidence. On the other hand, there was evidence that the GSA called Belt Con for roof repairs and that Belt Con responded in each instance and provided the work requested. Because there is no evidence indicating a probability that GSA would hold Metric liable, and there is evidence that GSA has not held Metric liable, the existence of Metric's liability to the GSA is insufficient to establish actual damages. We conclude that the district court did not err in denying Metric's motion to reduce Belt Con's award by the value of the roof warranties.

B.    Apportioning the Delays

Metric also challenges the district court's decision to not attribute any of the construction delays to Belt Con. Metric challenges the district court's legal analysis and its factual conclusions. We review issues of law de novo and the challenged fact findings for clear error. Hjelle v. Mid-State Consultants, Inc., 394 F.3d 873, 879 (10th Cir. 2005) ("If a finding of fact, we review only for clear error . . . ; but if an issue of law, our review is de novo.") (citations omitted).

After the bench trial, the district court denied Metric's request for liquidated damages resulting from delays Metric attributed to Belt Con. The district court determined that it would not grant Metric's request without evidence of the amount of delay attributable to Belt Con. The district court found, "Metric and other subcontractors delayed the FLETC project concurrently with Belt Con." Aplt. App'x Vol. I at 155. The district court also noted, "because Metric did not prove by a preponderance of the evidence how much, if any, delay should be attributed to Belt Con, any award of damages would be speculative." Id.

In the Memorandum and Opinion addressing Metric's motion to amend judgment, the district court expanded upon its factual findings and the legal basis for its conclusion. The district court stated that the project's scheduling created problems during construction and hindered the court's efforts to trace the causes of the delays. Aplt. App'x Vol. I at 222–23. The district court also found that "two of the largest culprits of delay—the GSA and R&R Concrete Contractors,

11

Inc. ("R&R[")]—[were] not parties to the case." Id. at 222. Although Metric and Belt Con presented expert testimony regarding the project's time line and the necessary order of benchmarks—the critical path[2]—the district court "did not find [Metric's expert's] methodology, evidence, or testimony reliable." Id. at 224. "Both experts that testified at the trial apportioned the construction delays between Belt Con and R&R." Id. at 226.

According to the findings of the district court, the critical path began on the first floor of "Building 21" and continued through Building 19. Id. at 224. "Belt Con admits that its masonry work on [Building 21's first] floor was completed two days late." Id. at 228. In its analysis regarding this work, the district court also considered that Metric did not deliver the entire first floor, as provided in the schedule, when Belt Con began working. Metric did not claim any delays associated with Belt Con's work on Building 19's first floor. Regarding Belt Con's work on Building 19's second floor, Belt Con's expert "determined that Belt Con completed the work eight days late," but that "there were concurrent delays" attributable to Belt Con and R&R. Id. at 230. When asked to clarify how the delays were concurrent, Belt Con's expert stated, "They're running—They're both delaying the work. They are not exactly at the same time. Both of them

---

[2] A delay along the critical path delays completion of the entire project. Morrison Knudsen Corp. v. Fireman's Fund Ins. Co., 175 F.3d 1221, 1231–32 (10th Cir. 1999).

12

caused additional delay . . . ." <u>Id.</u>  The district court noted that Belt Con's expert did not quantify what portions of the delay were concurrent and what portions were sequential.  On the other hand, the district court also found that "Metric's expert . . . concluded that [the delays related to Building 19's second floor] did not delay the project."  <u>Id.</u>  Regarding Building 19's third floor, the district court found that Belt Con's expert testified that the delays were concurrent.

Based on these expanded findings, the district court again declined to apportion the delays and reduce the amount of damages awarded to Belt Con. The district court stated, "Metric is correct that the Court can, where appropriate and the evidence so supports, apportion delay . . .  The Court will not hesitate to undertake that task where appropriate.  Metric has not, however, with its factual presentation or its legal arguments, convinced the Court that it should do so in this case."  <u>Id.</u> at 244.  Although the district court acknowledged that California law allowed courts to apportion damages for sequential delays, the court found that the delays were not sequential.  The district court rejected Metric's contentions that the delays at issue were sequential, reasoning "the Court cannot determine that Belt Con's delays were sequential when there was never a reliable project schedule in place."  <u>Id.</u> at 254.

Significantly, the district court questioned Metric's credibility in its effort to attribute fault for the delays to Belt Con.  <u>Id.</u> at 225 ("Metric's shifting position undercut its credibility with the Court.").  Before this action began, Metric

13

submitted a claim to the GSA with a delay analysis that attributed all of the delay to the GSA. This analysis consisted of a "twenty-page, single-spaced report with thirty-five pages of exhibits" and according to Metric's president was "made in good faith . . . and complete to the best of [his] knowledge and belief." Id. at 248. Based on this, the district court determined that "Metric did not equitably allocate delay damages in good faith, but arrived at [its expert's] analysis for purposes of litigation." Id. at 249. The district court concluded its analysis of the allocation of delays by agreeing with Metric's initial analysis that the GSA caused all of the delays directly or indirectly.

Metric raises four arguments challenging the district court's conclusions regarding the allocation of damages caused by delay. First, Metric argues that California law favors enforcing liquidated damages clauses and apportioning delay damages. Second, Metric contends that courts can apportion sequential and concurrent delays both as a matter of law, and as a result of a provision in the contract (Article 8) between Metric and Belt Con. Third, Metric asserts, "There was sufficient evidence presented . . . to allow the trial court to allocate the delay." Aplt. Br. at 38. Lastly, Metric argues that some of the delays were sequential. Belt Con responds that the district court's findings were correct, highlighting Metric's prior analysis attributing the delays to the GSA.

California courts apportion contractual liquidated damages "where delays in construction projects have been caused by both the owner and by the

14

contractor." Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Group, 49 Cal. Rptr. 3d 609, 621 (Cal. Ct. App. 2006) (citing Jasper Constr., Inc. v. Foothill Junior Coll. Dist., 153 Cal. Rptr. 767 (Cal. Ct. App. 1979); Nomellini Constr. Co. v. California ex rel. Dep't of Wat. Res., 96 Cal. Rptr. 682 (Cal. Ct. App. 1971)). In Nomellini, the California Court of Appeals rejected the notion that "where delays are caused on both sides there is no way to 'apportion damages[.]'" 96 Cal. Rptr. at 686. Instead, the California Court of Appeals reasoned that "[q]uantum of delay in terms of time is all that is being apportioned. That is an uncomplicated fact finding process." Id. Following Nomellini, the California Court of Appeals noted the importance of the contractual language allowing apportionment. Jasper, 153 Cal. Rptr. at 774 (listing "because the contract contained an explicit provision allowing apportionment" and the distinctions between public and private contracts as the two reasons for applying apportionment).

We are unaware of, nor does Metric provide,[3] California law addressing apportionment of concurrent delays. The reasoning of Nomellini suggests that California would not apportion concurrent delays, but such a determination is

_____

[3] Although Metric devotes several pages to its assertion that "Both Sequential and Concurrent Delay Can Be Apportioned," the only legal support for this argument is a citation to a case from the United States Court of Federal Claims. As stated, because California is the place of execution for the contract, we apply California law unless it contravenes New Mexico public policy. Metric has not addressed apportionment of delays under New Mexico law.

15

unnecessary for our present analysis. Following the court's direction in Jasper, we turn to the present contractual provision that addresses apportioning concurrent delays. Article 8 of the contract states in pertinent part:

> If delays are caused by more than one subcontractor, Contractor shall equitably allocate the damages for delay among the Contractor and those subcontractors responsible for the delay, and the Contractor's decision as to the allocation shall be final and binding on all subcontractors as long as the decision is made in good faith.

Aplt. App'x Vol. II at 261–62. The district court found that Metric did not allocate the damages in good faith, relying on Metric's initial delay analysis that attributed all of the delay to the GSA. Although Metric does not argue that this finding is incorrect, Metric dismisses the "so-called 'delay analysis' [as] a document prepared by Metric's counsel in litigation advocating the position of its client prior to any discovery." Aplt. Reply Br. at 8. This argument does not nullify the district court's conclusion that "Metric did not equitably allocate delay damages in good faith, but arrived at [its trial expert's] analysis for purposes of litigation." Aplt. App'x Vol. I at 249. Moreover, as noted by the district court, the contract "is silent . . . with regard to what happens if Metric's allocation was not done in good faith." Id. at 249.

We conclude that the district court's findings of fact and conclusions of law regarding the apportionment of damages in this case are correct. The court looked to the applicable contractual language and found Metric did not allocate concurrent damages in good faith. Consequently, we turn to Metric's argument

16

that the delays were sequential, not concurrent.

Metric bases its argument on the testimony of Belt Con's expert. While testifying about the construction of Building 19, the expert had this exchange with counsel:

> A. On the second and third floor there are concurrent delays between the masonry and concrete work.
> Q. So does that mean that the concrete delay and the masonry delay are running at the same time, during the same period of time?
> A. No. They're running—They're both delaying the work. They are not exactly at the same time. Both of them caused additional delay to the floor construction.

Aplt. App'x Vol. IV at 776. Metric concludes this argument by asserting, "If the delays are truly concurrent delays and are simultaneously caused by two subcontractors, each should bear a portion of the prime contractor's delay damages . . . ." Aplt. Br. at 40.

This testimony is insufficient for us to determine that the district court's factual findings were clearly erroneous. The district court heard Metric's expert testify that Belt Con's work on the second floor of Building 19 was not part of the critical path. The district court found that "Belt Con's expert testified that there were concurrent delays between the masonry and concrete [on the third floor of Building 19]." Aplt. App'x Vol. I at 247. Metric's reference to a statement where Belt Con's expert equivocated slightly does not establish that these findings were clear error. See Pencro Assocs., Inc. v. Sprint Spectrum, L.P., 499 F.3d 1151,

17

1161–62 (10th Cir. 2007) ("[P]ointing to conflicting evidence inconsistent with the district court's finding is insufficient, standing alone, to establish clear error, for every trial is replete with conflicting evidence, and in a bench trial, it is the district court, which enjoys the benefit of live testimony and has the opportunity to weigh firsthand to weigh credibility and evidence, that has the task of sorting through and making sense of the parties' competing narratives.") (quotation omitted). We conclude that the district court did not err in denying Metric's motion to amend judgment to attribute some of the construction delay to Belt Con.

### III

We affirm the judgment of the district court.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

18

07-2091, *United States of America for the use of Belt Con Construction, Inc. v. Metric Construction Co.*

**GORSUCH, J.**, Circuit Judge, concurring in part and dissenting in part.

I fully concur in the court's conclusion that Metric failed to adduce sufficient evidence about the value of the roof warranties Belt Con failed to supply. As the court notes, under California law a party must establish proof of damages with competent evidence affording "reasonable certainty." *Caminetti v. Manierre*, 142 P.2d 741, 745 (Cal. 1943). In this case, however, the only evidence Metric proffered was hearsay, the credibility of which the district court understandably found insufficiently reliable.

The court proceeds, however, to offer an additional basis for rejecting Metric's roof warranty claim, holding that Metric was required as a matter of law to demonstrate GSA was likely to hold it liable for work subject to Belt Con's (unproduced) warranties. But it is far from clear that California law holds insurance contracts to lack any recoverable value until and unless a claim under them is made or probable; indeed, such a conclusion appears at odds with the California Supreme Court's decision in *Caminetti*.[1] In any event, I see no need to

---

[1] In *Caminetti*, the California Supreme Court faced a case in which holders of noncancellable disability insurance policies sought damages from defendants for the fact that their policies were liquidated in a company restructuring. 142 P.2d at 742-43. The defendants argued that the plaintiffs might *never* suffer damages because they might die before becoming disabled. The Court squarely rejected this argument, noting that "[t]he effect of that argument would be to render wholly valueless the noncancellable feature of the policy, a definite and concrete promise of the insurer." *Id.* at 745. It continued "[t]hat the insureds will

(continued...)

reach such a legal holding, given Metric's failure to adduce any competent evidence whatsoever of the warranties' value.

On the separate question of liability for delays, the parties before us, as well as the district court, recognized that there are two potential bases for holding Belt Con liable for delays it caused the project. First, Belt Con could be held liable under a contractual provision providing that a subcontractor would be responsible for delays allocated to them by Metric so long as the allocation was "made in good faith." Aplt. App. at 139-140. And second, Belt Con could be held liable as a matter of California law. The district court held that Metric did not allocate delays in "good faith," and therefore proceeded to consider whether, as a matter of law, it could perform the allocation itself. It held it could not, concluding that the delays at issue were concurrent, not sequential, and that California law did not permit the allocation of concurrent delays.

Like the court today, I find the district court did not clearly err in concluding that Metric did not allocate delays in good faith and in finding that the delays were concurrent and not sequential. Unlike the court, however, I do not think these dual

_____

[1](...continued)
be damaged in the instant case is clear. They have forever lost the protection against possible loss which was secured to them by their policies. They have lost the chance they had to be specifically benefitted by that protection." *Id.* at 746. The Court then proceeded to state that the preferred damage award would be to grant the plaintiff damages according to the "replacement rule," namely the cost of similar insurance from another insurer. *Id.* at 747.

-2-

determinations end the matter. There remains the question whether California law permits the court to allocate concurrent delays. The court concludes that the reasoning of *Nomellini*, a 1971 case from the California Court of Appeals, "suggests that California would not apportion concurrent delays," but that "such a determination is unnecessary" for its present analysis. Maj. Op. at 15-16 (citing *Nomellini Constr. Co. v. California*, 19 Cal.App.3d 240, 246 (1971)). With respect to my colleagues, I believe such a determination, one way or the other, *is* necessary to resolve this case – otherwise we are left with a conclusion by the court that delays were concurrent, but no explanation why those delays cannot be apportioned.

Moreover, I read California law as permitting the allocation of concurrent delays of the type encountered in this case. *Nominelli* suggests as much, where the court stated that:

> categorical statements that where delays are caused on both sides there is no way to 'apportion damages' are an absurdity. . . . Quantum of delay in terms of time is all that is being apportioned. That is an uncomplicated fact finding process. That is what courts are for.

19 Cal.App.3d at 246. While I can envision a case in which delays attributable to distinct parties are so intertwined that it is impossible to separate them meaningfully, this is not such a case. *Both* parties presented experts that *did* apportion the delays attributable to Belt Con – the experts differed only as to the number of attributable days of delay, and neither party argued to the district court

-3-

that apportionment of delays was an impossibly complicated task.  And if the fact finding in this case was not impossibly complicated for the parties, I fail to see how it was impossibly complicated, as a matter of law, for the court.  Indeed, resolution of factually intensive disputes "is what courts are for."  *Id.* at 246; *cf. Robinson v. United States*, 261 U.S. 486, 489 (1923) (upholding damage award and stating "[h]ere the fault of the respective parties was not so clearly distributed in time, and it may have been difficult to determine, as a matter of fact, how much of the delay was attributable to each.  But the Court of Claims has done so in this case.").